[Civ. No. 8463.   Fourth Dist., Div. One.   Sept. 13, 1967.]

MARGARETE HART et al., Plaintiffs and Respondents, v. COUNTY OF ORANGE, Defendant and Appellant.

Dennin & Poitevin, William W. Dennin, Loeb & Loeb, Kaplan, Livingston, Goodwin, Berkowitz & Selvin and Herman F. Selvin for Defendant and Appellant.

Young, Prenner & Hews and William F. Byrnes for Plaintiffs and Respondents.

LAZAR, J. pro tem.*—Plaintiffs as heirs of decedent Edward G. Hart filed their complaint based in essence upon a charge of wrongful death resulting from a failure to summon medical care while he was a prisoner in the jail of defendant-appellant County of Orange. Trial before a jury resulted in a verdict for plaintiffs and defendant appeals from the judgment entered on the verdict.

The case is divisible into two basic categories. The first raises the question of defendant's immunity from suit as a public entity; the second concerns the sufficiency of the evidence to support as to liability the verdict against defendant. No issue is raised on this appeal concerning the amount of the verdict if liability is found to exist.

Since we conclude that there was substantial evidence to support the finding of the jury in favor of plaintiffs if defendant County is not immune from suit, we recite at this point only those facts required to bring the questions of immunity or liability into focus.

Mr. Hart, because of illness, had been off work for several days. Dressed in work clothes, he drove his pickup truck from his home about 2 p.m. About an hour later he and his parked truck were observed by nearby residents a few miles from his home. Decedent's failure to leave, unusual conduct in moving about the truck, and inquiry for his wife several times at a nearby house led to a call for the police who took him to the

---

*Assigned by the Chairman of the Judicial Council.

county jail, where he was booked as "too drunk to book." Decedent was kept in the drunk tank all night, became and remained unconscious and in the morning, in a comatose state, was taken to a hospital. Several days later he died of a form of encephalitis.

■ Defendant states its first contention in these words: "Does section 844.6, notwithstanding section 845.6 of the *Government Code*, give a County immunity from liability for the death of a person allegedly caused by the failure, while the person was a prisoner in the county jail, to summon medical care for him?"

Upon appeal from a judgment of dismissal after demurrer sustained without leave to amend, this question was answered in the negative in *Sanders* v. *County of Yuba* (Jan. 1967) 247 Cal.App.2d 748, 754 [55 Cal.Rptr. 852]. We concur in the result of that decision and in particular with that portion of the opinion which reads: "We hold, therefore, that reading section 844.6, subdivision (a), and the second clause of section 845.6 together, and to give both meaning, the Legislature intended by its statement in the former section that: a public entity shall not be liable for an injury to any prisoner except as provided under subdivisions (b), (c) and (d) of *this* section and as hereinafter provided in section 845.6."

No useful purpose would be served by further analysis of the legislative history of the two sections in question, as Preiding Justice Pierce has ably accomplished that task. We would suggest, however, a different view of the subject matters of the two sections which tends, we think, to reduce or eliminate any feeling of inconsistency between the sections.

The two sections, included in part 2, Liability of Public Entities and Public Employees, of the Government Code, read as follows: "844.6. Injuries by and to prisoners. (a) Notwithstanding any other provisions of law, except as provided in subdivisions (b), (c) and (d) of this section, a public entity is not liable for:

" (1) An injury proximately caused by any prisoner.

" (2) An injury to any prisoner.

" (b) Nothing in this section affects the liability of a public entity under Article 1 (commencing with Section 17000) of Chapter 1 of Division 9 of the Vehicle Code.

" (c) Nothing in this section prevents a person, other than a prisoner, from recovering from the public entity for an injury resulting from the dangerous condition of public property under Chapter 2 (commencing with Section 830) of this part.

"(d) Nothing in this section exonerates a public employee from liability for injury proximately caused by negligent or wrongful act or omission. The public entity may but is not required to pay any judgment, compromise or settlement, or may but is not required to indemnify any public employee, in any case where the public entity is immune from liability under this section; except that the public entity shall pay, as provided in Article 4 (commencing with Section 825) of Chapter 1 of this part, any judgment based on a claim against a public employee licensed in one of the healing arts under Division 2 (Commencing with Section 500) of the Business and Professions Code for malpractice arising from an act or omission in the scope of his employment, and shall pay any compromise or settlement of a claim or action based on such malpractice to which the public entity has agreed."

"845.6 Failure to furnish or obtain medical care for prisoner. Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but, except as otherwise provided by Sections 855.8 and 856, a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care. Nothing in this section exonerates a public employee licensed in one of the healing arts under Division 2 (commencing with Section 500) of the Business and Professions Code from liability for injury proximately caused by malpractice or exonerates the public entity from liability for injury proximately caused by such malpractice."

Section 844.6, subdivision (a) (2), immunizes a public entity against liability for "An injury to any prisoner," thus reiterating the general immunity found in Government Code, section 815, subdivision (a), and in section 815.2, subdivision (b). "Injury" is defined in section 810.8 as "death, injury to a person, damage to or loss of property, or any other injury that a person may suffer to his person, reputation, character, feelings or estate, of such nature that it would be actionable if inflicted by a private person." The modifying phrase which concludes the definition just quoted necessarily qualifies all that precedes in the section for the reason that actionable injuries are what part 2 of the subject legislation is all about,

in a context of longstanding governmental immunity from actionable injuries. No logical reason presents itself why the modifying phrase should be limited to that portion of the section commencing "or any other injury. . . ."

It follows that a prisoner who experiences an otherwise actionable injury nevertheless is without action against the public entity which is the confining authority. He is not without remedy, however, against a public employee who does not have available to him a comparable immunity in the face of the employee's wrongful act or omission. In sum, section 844.6 says that a prisoner who experiences an injury which otherwise would be actionable for the reason that he is a prisoner may not recover against the public entity. Section 844.6 does not concern itself with either the type of duty which may be breached or with kinds of injury which may be suffered; it concerns itself only with status as a prisoner and with injuries which, but for that status, would give rise to a cause of action.

In contrast, section 845.6 deals with a positive subject, the creation of a liability. It has to do with something which exists neither privately nor publicly, an obligation of help. Under certain limited conditions, that is, actual or constructive knowledge of a need for immediate medical care, a duty of "reasonable action to summon" medical care is created. The subject of the section is not, as in section 844.6, an admitted breach of duty as to which no remedy shall exist, but the creation of a duty whose breach will lead to liability regardless of the foundational circumstances, be they trauma or disease and whatever the origin. Section 845.6 deals with the creation of a liability, not with the reiteration of an immunity and therefore deals with a subject not inherent in section 844.6 nor inhibited by the restrictions and limitations of that section's subject matter.

In this view it may be considered that the phrase "Notwithstanding any other provisions of law" of section 844.6 would relate only to injuries recognized as actionable if inflicted by a private person and not to injuries resulting from breach of a newly-defined duty not applicable to private persons, created by the Legislature as a special burden to be borne by public entities under limited circumstances.

Much of the insistence upon section 844.6 appears to have been based upon the contemplated magnitude of liability if immunity were not to exist from what might be termed common law or traditional tort actions. Certainly they could be

expected to be numerous and expensive under jail conditions. On the other hand, exposure to the liability imposed by section 845.6 would arise infrequently and establish only a modest standard of care in an area of ethical duty which Prosser refers to as "the moral obligation of common decency and common humanity, to come to the aid of another human being who is in danger." (Prosser, Law of Torts (3d ed.) p. 336.) We see this distinction in point of view as a valid basis for differentiation in legislative policy.

The defendant contends also that the evidence is insufficient to support the verdict even if it be held that the defendant is not immune to liability. The question is posed in these words: "Is there substantial evidence that an employee of the County, acting in the scope of his employment (1) knew or had reason to know that Mr. Hart was in need of immediate medical care; and (2) failed to take reasonable action to summon such care?"

In this connection we remind ourselves of the scope of and limitation upon the appellate court authority by referring to *Crawford* v. *Southern Pac. Co.,* 3 Cal.2d 427, 429 [45 P.2d 183]: "In reviewing the evidence on such an appeal all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. It is an elementary, but often overlooked principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court. [Citing cases.]"

■ A review of the evidence relating to the decedent's detention in the jail discloses that the factual question of actual or constructive knowledge of need for immediate care by an employee acting within the scope of his employment and of reasonable action to summon immediate medical care were properly questions for the jury and the evidence thereon is not subject to being reweighed by this court. A brief summary of the evidence construed most favorably to plaintiffs will demonstrate this to be so.

Decedent was booked at the county jail at 7:48 in the

evening under a charge of violating Penal Code, section 647, subdivision (f) (drunk in a public place). When the prisoner was brought to the jail, his custodians were helping him to walk. The sergeant deputy sheriff in charge recognized the possibility of illness and stated: "If the man is ill, take him to the hospital." The sergeant also commented that "the subject was acting odd or unusual . . . and if anything come [*sic*] up he was going to transport him to the Orange County Hospital." The jailer who took delivery of decedent considered he did not have the appearance of the "standard" drunk and because of the doubt raised sent him to the jail dispensary.

An inmate trusty was in charge of the dispensary, having so served for three and one-half months. Mr. Hart was assisted into the dispensary by two nonjail officers; he was in a coma or unconscious; had no odor of alcohol. The trusty had the sergeant verify the absence of an odor of alcohol; told him Mr. Hart was sick, there appeared to be something different about him, possibly he had had a stroke, he should be taken to a hospital. Mr. Hart was put in a drunk cell. The trusty, pursuant to instructions, looked at Mr. Hart periodically and thought he was sleeping. Some time during the evening (three to four hours after the trusty's examination), a medical doctor, employed to make alcohol-content tests came to the jail. The sergeant asked the doctor to examine Mr. Hart, as he might have had a fit or seizure. An examination was made and the sergeant was told it would be all right for Hart to stay in jail but to send for him if he had another episode. The doctor made no further examination of Mr. Hart. Decedent was found in the morning hours still to be unconscious and he was then removed and admitted to the hospital at 7:27 a.m.

It would serve no useful purpose to consider the evidence at greater length or in greater detail since it must be obvious that substantial evidence was properly put before the jury. Many conflicts were present as to time elements, statements made and conditions (such as odor of alcohol) existing so that there is no room for re-evaluation of the evidence or of the jury's implied findings in favor of plaintiffs. Likewise, it is clear that the sergeant who was in charge, within minutes of the delivery of Mr. Hart to the jail, had all the information anyone had about Mr. Hart's condition and it was squarely for the jury whether he came within and had met the conditions and standards of section 845.6.

Both contentions on appeal must be concluded against appellant and the judgment is affirmed.

Brown (Gerald), P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied October 4, 1967, and appellant's petition for a hearing by the Supreme Court was denied November 8, 1967.