[Civ. No. 31745.   Second Dist., Div. Four.   July 2, 1968.]

PETRA DATIL et al., Plaintiffs and Appellants, v. CITY OF LOS ANGELES, Defendant and Respondent.

---

*Assigned by the Chairman of the Judicial Council.

Joseph W. Fairfield and Ethelyn F. Black for Plaiantiffs and Appellants.

Roger Arnebergh, City Attorney, John A. Daly, Assistant City Attorney, and Arthur Y. Honda, Deputy City Attorney, for Defendant and Respondent.

COLLINS, J pro tem.*—This is an action for wrongful death against the City of Los Angeles, a municipal corporation, brought by the widow of Alejandro Datil, on behalf of herself and as guardian ad litem for the six minor children of Alejandro and herself.

The facts are these:

On March 30, 1964, Alejandro Datil, while celebrating his birthday consumed too much liquor, became intoxicated and unable to care for himself. He was picked up by a police officer of the City of Los Angeles and charged with violating section 647, subdivision (f), of the Penal Code (drunk in a public place). On the same day, at about the same time, one Rufus Rhines was also arrested for being drunk and was charged with the same offense. His criminal record which was in the files of the Los Angeles Police Department, but not known to the arresting officers, showed over 30 prior arrests.

Both Datil and Rhines were booked[1] at the Central Jail Division (150 North Los Angeles Street, Los Angeles) and then placed in a police bus with several other prisoners for transfer to the Main Jail Division (known as Lincoln Heights Jail, located at 401 North Avenue 19, Los Angeles). While

---

*Assigned by the Chairman of the Judicial Council.

[1]Penal Code, section 7, subdivision 21, defines ''book'' as used in this context, as follows:

''21. To 'book' signifies the recordation of an arrest in official police records, and the taking by the police of fingerprints and photographs of the person arrested, or any of these acts following an arrest.''

en route to the main jail, Datil was loud and boisterous and appeared to be verbally abusive toward Rhines who was seated next to him. Datil spoke only in Spanish, which Rhines did not understand, but there was no physical altercation between the two men while on the bus. When the bus arrived at the main jail, Rhines got off first and sat down on a bench in the hallway near the receiving section of the jail along with several other prisoners. Datil got off the bus and began walking down the hallway, crying or speaking very loudly in Spanish when suddenly without any warning or provocation Rhines jumped up and struck Datil in the face with his fist. Rhines' blow felled Datil, causing the latter to strike his head against the concrete floor, suffering a skull fracture and rendering him unconscious. He never regained consciousness. He was removed to the Los Angeles County General Hospital where he died on April 11, 1964, as a result of the injury. Later Rhines pleaded guilty to a charge of manslaughter (Pen. Code, § 192).

Thereafter plaintiff widow, on behalf of herself and children, filed with the City a claim for $1,000,000 which was rejected, following which the present action was commenced. The complaint alleged that the city police department was negligent and careless in supervising inmates and prisoners of the jail, and that as a proximate result thereof Alejandro Datil sustained the injury which resulted in his death. Defendant's answer denies the foregoing allegations and by way of affirmative defenses charged that Alejandro was guilty of negligence in that he was intoxicated, belligerent, antagonistic and combative with his fellow prisoners, that he failed to take care to avoid injury to himself, and that his injuries resulted solely from his own misconduct. Defendant also pleaded, as a special defense, the provisions of Government Code, section 844.6. That section, added in 1963, provides that, except in instances not applicable here, ". . . a public entity is not liable for: (1) An injury proximately caused by any prisoner. (2) An injury to any prisoner."

Section 845.2 provides that (except as provided in other instances) "neither a public entity nor a public employee is liable for failure to provide a prison, jail or penal or correctional facility or, if such facility is provided, for failure to provide sufficient equipment, personnel or facilities therein."

Section 844 defines "Prisoner" as follows: "As used in this chapter, 'prisoner' includes an inmate of a prison, jail or penal or correctional facility."

The trial before a judge sitting without a jury was had on the basis of a written stipulation of facts, augmented by reports of various municipal departments, payroll records, and the deposition of the plaintiff widow.

The court prepared findings of fact which included one that both the deceased, Alejandro Datil, and Rufus Rhines, who assaulted him, were prisoners in the custody of the Main Jail Division of the Los Angeles Police Department at the time of the assault, that Datil's death was not caused by negligence of the city in failing to provide him adequate protection. The court concluded that the action was barred by Government Code, sections 844.6 and 845.2, as to the defendant City and that the sole proximate cause of Datil's death was the act of Rhines.

This appeal presents three separate grounds for reversal: (1) Alejandro Datil and Rufus Rhines were not "prisoners" at the time Rhines struck Datil. (2) The defendant City was guilty of negligence in not providing Datil adequate protection. (3) The California Tort Claims Act of 1963, of which Government Code sections 844.6 and 845.2 are a part, is unconstitutional to the extent that it extends immunity from liability to public entities and agencies below the level of the State of California itself.

In support of their first ground of appeal, namely, that neither Datil nor Rhines was a "prisoner" at the time of the assault by Rhines, plaintiffs contend that at that time no complaint had been filed, no arraignment had, and no plea to any charge entered by either man. Alluding to the statutory definition of prisoner in section 844, plaintiffs concede that the word "includes" (as used in the phrase " 'prisoner' includes an inmate") is a word of enlargement and not of limitation. (*Oil Workers Intl. Union* v. *Superior Court*, 103 Cal.App.2d 512, 570 [230 P.2d 71]; *People* v. *Western Air Lines, Inc.*, 42 Cal.2d 621, 639 [268 P.2d 723].) Nevertheless plaintiffs insist that the definition is controlled by the word "inmate" which means "a resident, dweller, lodger, at least with some degree of permanency," and that the term "prisoner" is to be construed in its narrow and technical sense as a "person deprived of his liberty by virtue of a judicial or other lawful process; . . ." (Plaintiffs cite 72 C.J.S. Prisoner, p. 847; 39 Cal.Jur.2d, Prisons and Prisoners, § 3, p. 638; 41 Am.Jur., Prisons and Prisoners, § 2, p. 886.) Quite understandably plaintiffs cite no authority for this novel synthesis of the statutory language; our own research has uncovered no

such authority. On the contrary, almost every popular dictionary as well as law dictionary and encyclopaedic work, states in words or substance that a prisoner is a person "under arrest," "in custody," "in jail," "in prison"; in short, one who is being restrained involuntarily. The test is not whether he has been informed against, indicted, arraigned, tried or convicted. In this case the record shows that both Datil and Rhines had been booked (as provided in Pen. Code, § 7, subd. 21) and were in the process of transit from one jail to another. Clearly they were not being transferred in the course of a voluntary tour of city penal institutions, or otherwise as civic guests of the City of Los Angeles. An incarcerated, love-struck poet might sing out euphorically, but certainly not accurately, that

"Stone walls do not a prison make
Nor iron bars a cage."[2]

But here the two inebriates could have had no such illusion as to their temporary status.

It is of no significance that the lethal blow was struck while the men were in the receiving room as distinguished from a corridor, recreation area, locker room, mess hall or cell block. Datil and Rhines were prisoners in jail by any sensible intendment of the English language.[3] We find plaintiffs' first ground of appeal entirely without merit.

The second ground of appeal is that the city police were negligent in not protecting Datil from injury. This ground apparently implies municipal liability for acts of its police as having some vicarious basis. In passing, it is noted that the complaint did not join as defendants any police officer or jail employee or plead any alternative theory of liability.[4] In any case, the claim, so far as this case is concerned, need not be

---

[2]Richard Lovelace (1618-1657) "To Althea From Prison." Compare "Stone Walls a Prison Make, But Not A Slave"—Wm. Wordsworth (1770-1850) "Humanity." See also: "Ballads of Reading Gaol"—by Oscar Wilde.

[3]Jail and "gaol" are synonymous. In England the archaic spelling "gaol" still persists chiefly due to statutory and official tradition, but it is considered obsolete in present-day literary and spoken form. In the United States "jail" has always been both the official and popular mode of spelling. See The Oxford English Dictionary—(Clarendon Press, Oxford) Vol. 5, 1933.

[4]This case is not based on any claim under Government Code, section 845.6, that the defendant city or its employees failed to summon medical care, knowing, or having reason to know, that the prisoner was in immediate need of such care. Thus, the cited case of *Hart* v. *County of Orange* (1967) 254 Cal.App.2d 302 [62 Cal.Rptr. 73] has no relevancy here.

separately discussed for it is governed by our disposition of the remaining ground of appeal.

The third ground of appeal is that the California Tort Claims Act of 1963 is unconstitutional. Plaintiff cites a number of cases which were decided with respect to legal principles, statutes and judicial decisions which had effective application prior to the enactment of the Tort Claims Act in 1963 and in some instances related to special legislation or arose under very dissimilar contexts. Thus they do not require individual consideration here.

At common law the distinction between purely governmental functions and proprietary functions of public entities was recognized as a basis for determining immunity or non-immunity from tort liability. Under that test the function of maintaining and operating jails and prisons was recognized as a governmental function.

However, in recent times, the immunities attaching to governmental functions has progressively eroded as a result of special legislation and court interpretations of ameliorative statutes, culminating in the case of *Muskopf* v. *Corning Hospital Dist.* (1961) 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457], which virtually abrogated the doctrine of governmental immunity in California. Following that decision and relying largely on the study and report by the California Law Revision Commission, the Legislature enacted the California Tort Claims Act of 1963. The result is that today there is no common law governmental tort liability in this State and "[e]xcept as otherwise provided by statute" there is no liability on the part of a public entity for any act or omission of itself, a public employee or any other person. (Gov. Code, § 815.)

It is plaintiffs' specific contention that the California Tort Claims Act violates the due process clause of the Fourteenth Amendment to the United States Constitution in that it illegally grants an immunity from liability for torts to subordinate public entities, which results in unequal protection of the law. As we read plaintiffs' brief, they concede that immunity at the state level violates no constitutional rights of the private citizen, but that when the state undertakes to "delegate" its own immunity to subordinate entities, such as counties and cities, unconstitutionality is the result.

We are unable to follow, much less accept, plaintiffs' argument. For present purposes it is enough to observe that in all of the cases in which the Tort Claims Act of 1963 has been

subjected to constitutional attack to date, the appellate courts have upheld its constitutionality. (See *County of Los Angeles v. Superior Court* (1965) 62 Cal.2d 839 [44 Cal.Rptr. 796, 402 P.2d 868]; *Reed* v. *City & County of San Francisco* (1965) 237 Cal.App.2d 23 [46 Cal.Rptr. 543].)

We find plaintiffs' third ground of appeal to be lacking in merit.

The judgment is affirmed.

Files, P. J., and Jefferson, J., concurred.

A petition for a rehearing was denied July 18, 1968, and appellants' petition for a hearing by the Supreme Court was denied August 28, 1968.