[No. F003490. Fifth Dist. June 6, 1985.]

DONNA ZEILMAN, Plaintiff and Appellant, v.
COUNTY OF KERN, Defendant and Respondent.

**COUNSEL**

V. P. Di Giorgio for Plaintiff and Appellant.

Borton, Petrini & Conron and Daniel L. Ferguson for Defendant and Respondent.

**OPINION**

**HAMLIN, J.**—Plaintiff, Donna Zeilman, appeals from an order granting summary judgment in favor of defendant and dismissing her complaint for damages for personal injuries suffered when she fell in the county jail facility where she was being booked.[1] The trial court granted summary judgment based on defendant's claim of governmental immunity under Govern-

---

[1] In the record before us there is a minute order stating that summary judgment was granted. Thereafter the trial court signed an order granting summary judgment and dismissing plaintiff's action. This order was entered as a judgment. We accept the appeal from the order entered as a judgment inasmuch as it was effective to dismiss and terminate plaintiff's entire cause of action. (See *Varjabedian* v. *City of Madera* (1977) 20 Cal.3d 285, 289, fn. 1 [142 Cal.Rptr. 429, 572 P.2d 43].)

ment Code sections 844 and 844.6[2] because plaintiff was a prisoner at the time of injury.

On appeal, plaintiff urges that the trial court erred in granting summary judgment because there were factual issues as to (1) her status as a prisoner at the time of her injury and (2) defendant's breach of its duty to provide her immediate medical care pursuant to section 845.6. We agree and reverse the judgment.

### THE FACTS

Pursuant to a warrant, plaintiff was arrested in her office on January 12, 1980, for grand theft. At that time she was suffering from an injury to her leg incurred while skiing. Her injury was disabling to the point that it was necessary for her to use crutches to walk.

The arresting officers took plaintiff to the Kern County jail for booking. She remained standing in the busy booking area throughout the booking procedure. When the booking deputy finished with her and pointed to a chair, plaintiff attempted to walk to it with the aid of her crutches. She slipped and fell before she reached the chair.

The declarations of booking deputy Martha Overfield and Sergeant Stephen McCollum submitted by defendant in support of its motion for summary judgment establish that completion of an arrest and booking report is part of the booking procedure. This booking report includes information about the suspect and the arrest. After completion it becomes an official permanent record of the arrest maintained at the jail. A blank sample of this form was filed with the Overfield declaration, and this sample shows a space on the form for fingerprints and instructions regarding photographing. Overfield declared that she had completed the property inventory and the arrest and booking report at the time she told plaintiff to sit down.

With respect to plaintiff's claim that jail personnel had failed to provide her with necessary immediate medical care, defendant submitted excerpts from plaintiff's deposition, indicating she never asked for any assistance in reaching the chair to which she had been directed.

In opposition to defendant's motion for summary judgment, plaintiff's attorney submitted a declaration stating that he arrived at the jail during the booking procedure and could observe his client being booked, in an "aggitated [*sic*], emotional and weakened condition which was easily apparent

---

[2]Unless otherwise indicated, all further statutory references are to the Government Code.

to him and any other person in his vicinity." Plaintiff's counsel had already obtained a signed "OR release" for plaintiff, and he was told this would be honored as an order of the court *after* the booking process was completed. Counsel then waited some 20 to 30 minutes while the booking process continued.

## DISCUSSION

I. *Summary Judgment Was Not Proper Because There Was a Triable Issue of Fact as to Plaintiff's Status as a Prisoner at the Time of the Injury.*

Code of Civil Procedure section 437c provides in pertinent part: "(c) The motion shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . ."

The general rules of summary judgment procedure are summarized in *Bonus-Bilt, Inc.* v. *United Grocers, Ltd.* (1982) 136 Cal.App.3d 429, 440-441 [186 Cal.Rptr. 357]: "The rules of summary judgment procedure are well established and, so far as pertinent here, may be concisely stated. A judgment granting a summary judgment motion is appealable. (Code Civ. Proc., § 437c; *Bank of America* v. *Superior Court* (1970) 4 Cal.App.3d 435 [84 Cal.Rptr. 421].) 'The matter to be determined by the trial court in considering such a motion is whether the defendant (or the plaintiff) has presented any facts which give rise to a triable issue. The court may not pass upon the issue itself. Summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue. The aim of the procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedures of a trial. In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. Such summary procedure is drastic and should be used with caution so that it does not become a substitute for the open trial method of determining facts. [Citations omitted.]' (*Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785]; . . .)"

 On appeal, any factual conflicts are resolved in favor of the non-moving party. (*Chesney* v. *Gresham* (1976) 64 Cal.App.3d 120 [134 Cal.Rptr. 238], cert. den. (1977) 432 U.S. 907 [53 L.Ed.2d 1079, 97 S.Ct. 2952].) Moreover, this court's review is limited to the facts before the trial

judge at the time he ruled.[3] However, this court must independently determine the construction and effect of these facts as a matter of law. (*Bonus-Bilt, Inc.* v. *United Grocers, Ltd.*, *supra*, 136 Cal.App.3d at p. 442.)

The first ground on which defendant based its motion for summary judgment is the immunity afforded by section 844.6 which provides in pertinent part:

"(a) Notwithstanding any other provision of this part, except as provided in this section and in Section 814, 814.2, 845.4 and 845.6, or in Title 2.1 (commencing with Section 3500) of Part 3 of the Penal Code, a public entity is not liable for:

"(1) An injury proximately caused by any prisoner.

"(2) An injury to any prisoner.

". . . . . . . . . . . . . . . . . . . . . . . ."

"Prisoner" is defined in section 844: "As used in this chapter, 'prisoner' includes an inmate of a prison, jail or penal or correctional facility." Although the record contains no statement of the trial court's rationale in granting defendant's motion for summary judgment, to the extent defendant relied upon section 844.6, the trial court must necessarily have concluded that plaintiff was a prisoner as a matter of law, i.e., no triable issue of fact existed as to plaintiff's status.

Judicial construction of the definition of the word "prisoner" in section 844 is by no means unanimous. In *Sahley* v. *County of San Diego* (1977) 69 Cal.App.3d 347, 349 [138 Cal.Rptr. 34], the court summarized much of the applicable case law: "A '"prisoner" includes an inmate of a prison, jail or penal or correctional facility' (Gov. Code, § 844). The Legislative Committee comment on this section includes as prisoners persons in the custody of a law enforcement officer although undergoing medical treatment in a county hospital, those in work camps and those engaged in fire suppression; parolees are not. From case law, the deprivation of liberty by lawful process or some kind of involuntary restraint characterizes one's status as a prisoner or inmate (*Patricia J.* v. *Rio Linda Union Sch. Dist.* [(1976)] 61 Cal.App.3d 278, 283 . . .; *Jiminez* v. *County of Santa Cruz* [(1974)] 42 Cal.App.3d 407, 410 . . .; *Larson* v. *City of Oakland* [(1971)] 17

---

[3]The facts alleged in affidavits by the party against whom summary judgment is based must be accepted as true. (E.g., *Blaustein* v. *Burton* (1970) 9 Cal.App.3d 161 [88 Cal.Rptr. 319].)

Cal.App.3d 91, 96 . . .; *Datil* v. *City of Los Angeles* [(1968)] 263 Cal.App.2d 655, 658 . . .). Thus, a person who has been booked is considered a prisoner (*Datil* v. *City of Los Angeles, supra,* 263 Cal.App.2d 655, 659) while persons who have been temporarily detained for investigation (*Larson* v. *City of Oakland, supra,* 17 Cal.App.3d 91, 97), juveniles who are wards of the court but in custody of their parents (*Patricia J.* v. *Rio Linda Union Sch. Dist., supra,* 61 Cal.App.3d 278, 287), and persons falsely imprisoned beyond the term of their prison sentences are not (*Sullivan* v. *County of Los Angeles* [(1974)] 12 Cal.3d 710, 715 . . .). Here, Sahley was a preconviction detainee awaiting trial; he had been booked and arraigned; he was a 'prisoner' for purposes of governmental immunity (see *Datil* v. *City of Los Angeles, supra,* 263 Cal.App.2d 655)."

With respect to the definition provided in section 844, the court in *Patricia J.* v. *Rio Linda Union Sch. Dist.* (1976) 61 Cal.App.3d 278, 283 [132 Cal.Rptr. 211], stated, "Appellate courts, since the adoption of that section, have struggled with its meaning; some have said the section is exhaustive and that the word 'prisoner' means only inmates of an institution under restraint [citation omitted], while others have sought to ascribe an expansive meaning to the section because of the use of the word 'includes.' [Citation omitted.]"

Indicative of this disparity are the opinions in *Jiminez* v. *County of Santa Cruz* (1974) 42 Cal.App.3d 407 [116 Cal.Rptr. 878] and *Larson* v. *City of Oakland* (1971) 17 Cal.App.3d 91 [94 Cal.Rptr. 466]. The court in *Jiminez* stated in part, "Section 844, in defining 'prisoner,' uses the word 'includes,' indicating that the term 'prisoner' is to be broadly interpreted." (*Jiminez, supra,* at p. 409.) However, the court in *Larson* v. *City of Oakland, supra,* after reviewing rules of statutory construction, other definitions of the term "prisoner," and related statutes concluded, "We thus do not discern in the subject matter, the context, nor in its appropriate and legal sense, any legislative intention to extend the definition of 'prisoner' to include a person detained by the police but not arrested, or arrested and not booked. It clearly was not intended to embrace persons detained by law officers temporarily for purposes of investigation. [Citations omitted.]" (*Larson, supra,* at p. 97.) Thus the court in *Larson* found that the governmental entity was not immune from liability for the injuries suffered by the plaintiff after he had been arrested and handcuffed and during the time he was being escorted to and placed in the police vehicle.

A narrow construction of the term "prisoner" is also advanced in Van Alstyne, California Government Tort Liability Practice (1980) Liabilities and Immunities, section 4.10a, page 344: "The literal connotations of the term 'inmate,' as well as relevant legislative developments, suggest that the

term 'prisoner' should be construed narrowly so as to exclude persons who are merely being detained or held under arrest. See *Larson* v. *Oakland* (1971) 17 CA3d 91, 94 CR 466. Moreover, in 1970 the legislature amended Govt C § 845.8(b) (conferring sovereign immunity for injuries caused by an escaping or escaped 'prisoner') to extend that immunity to injuries caused by an 'escaping or escaped arrested person' and by a 'person resisting arrest.' See § 4.19. The definition of 'prisoner' in Govt C § 844 was not changed, however, implying that the explicit textual distinction between a person who is a prisoner and one who has been arrested or is resisting arrest is deliberate and meaningful." (See also *Meyer* v. *City of Oakland* (1980) 107 Cal.App.3d 770, 778 [166 Cal.Rptr. 79].)

Notwithstanding a certain amount of deprivation of liberty attendant upon an arrest, all the cases do seem to recognize a distinction between persons who are simply under arrest and therefore are not prisoners and those persons who have become "confined in a correctional facility or institution under the authority of law enforcement authorities or legal process." (*Patricia J.* v. *Rio Linda Union Sch. Dist.*, *supra*, 61 Cal.App.3d at p. 287.) ▮ From the cases discussed above, specifically *Sahley* v. *County of San Diego*, *supra*, 69 Cal.App.3d at page 349; *Larson* v. *City of Oakland*, *supra*, 17 Cal.App.3d at page 97; and *Datil* v. *City of Los Angeles* (1968) 263 Cal.App.2d 655, 658-659 [69 Cal.Rptr. 788], it appears the line of demarcation between status as an arrestee and as a confined person is the completion of the booking process. Once an arrestee has been booked, the status of the arrestee changes since he or she has become confined to a correctional facility under the authority of law. ▮ Thus the significant inquiry in the instant case is whether plaintiff had been booked into the Kern County Sheriff's jail facility at the time she suffered the injuries alleged.

Defendant first contends that plaintiff admitted in her complaint that the booking process had been completed before her injury and that plaintiff is bound by this admission. In a claim for personal injuries attached to plaintiff's complaint as exhibit 1, plaintiff alleged that she was compelled by jail personnel to remain standing during an extended booking procedure despite the fact she was on crutches and asked several times to sit down because of pain and weakness in her leg. The complaint then alleges that "jail personnel negligently permitted water to accumulate and stand in the area between the area where plaintiff was compelled to remain standing during such extended booking procedure and the chair and/or bench to which she was directed following *completion of such booking procedure.*" (Italics added.) Although defendant referred to this "admission" by plaintiff in its initial memorandum of points and authorities to the trial court, the weight of the defendant's argument was directed to plaintiff's *status* as a prisoner based

on defendant's interpretation of the statutes and cases summarized above rather than plaintiff's "admission." Had defendant relied in the trial court on plaintiff's "admission" in her pleading as it does on this appeal, the trial court should have permitted plaintiff to amend her complaint to delete this "admission."

█ As the court stated in *Residents of Beverly Glen, Inc.* v. *City of Los Angeles* (1973) 34 Cal.App.3d 117, 128 [109 Cal.Rptr. 724], "Further, on a motion for summary judgment, considerable liberality should be used by the trial court in allowing amendments which do not completely and entirely depart from the general area of the cause set up in the pleadings. [Citations omitted.]" This liberality in amendment is consistent with the restraint to be used in granting motions for summary judgment to prevent such motions from becoming substitutes for the "'open trial method of determining facts.'" (*Bonus-Bilt, Inc.* v. *United Grocers, Ltd., supra,* 136 Cal.App.3d at p. 441.) █ Additionally, in *Cox* v. *State of California* (1970) 3 Cal.App.3d 301, 309 [82 Cal.Rptr. 896], the court stated, "In determining whether triable issues are presented, the court may not consider the allegations of the complaint *except to the extent they are not controverted by affidavits on either side.* [Citations omitted.]" (See also *McCreery* v. *Eli Lilly & Co.* (1978) 87 Cal.App.3d 77, 81-82 [150 Cal.Rptr. 730].)

█ As stated above, plaintiff's attorney declared that *very* shortly after plaintiff's arrest, he obtained a signed "OR release" from Judge Nairn for plaintiff's immediate release from detention. When he arrived at the jail facilities and presented the signed OR release form to the jailer, he noticed that plaintiff was being booked. "Declarant was advised by jail personnel that while the OR release would be honored as an order of the court, that nevertheless the plaintiff would not be released until 'all booking procedures had been completed.' [¶] Thereafter, declarant waited some twenty to thirty minutes while the booking procedure continued." The declaration of Martha Overfield submitted in support of defendant's motion for summary judgment states in part: "In the afternoon hours of January 12, 1981, I booked Donna Zeilman into the Kern County Main Jail facility and followed the general procedures outlined above including the recordation by manual typewriter of all of the required information on the Kern County Sheriff's Department Arrest and Booking Report. After completing the property inventory and completing the Arrest and Booking Report, Mrs. Donna Zeilman was told that she could sit down on a bench located adjacent to the booking station."

█ In passing on a motion for summary judgment all doubts are resolved in favor of the party opposing the motion, and the affidavits or declarations of the party opposing the motion are liberally construed while those of the

party seeking the motion are strictly construed. (*Bonus-Bilt, Inc. v. United Grocers, Ltd., supra,* 136 Cal.App.3d at p. 441.) ▮ Applying these standards, these declarations do not establish, as a matter of law, that the booking of plaintiff had been completed at the time plaintiff was directed to the bench and suffered the fall. According to the Overfield declaration, only the paperwork portion of the booking procedure was completed at the time plaintiff was directed to the bench, i.e., she had not then been fingerprinted or photographed.

Defendant points to Penal Code section 7, subdivision 21, to support its contention that recordation of an arrest in official police records completes the booking procedure. Penal Code section 7, subdivision 21, provides: "To 'book' signifies the recordation of an arrest in official police records, and the taking by the police of fingerprints and photographs of the person arrested, or any of these acts following an arrest." We are not persuaded that this language, in a statute applicable to all sections of the Penal Code, necessarily means as a matter of law that completion of the record of the arrest in official police records completes the booking process, whether or not the particular law enforcement agency requires completion of all three acts prior to a prisoner's release.

Analogizing to release on bail (see, e.g., *Shakespeare v. City of Pasadena* (1964) 230 Cal.App.2d 375, 384 [40 Cal.Rptr. 863]), plaintiff was *entitled,* immediately upon completion of the booking process, to an OR release, subject only to the Penal Code section 1318 requirement of a signed release agreement. Therefore defendant cannot contend the booking process was completed when the paperwork was completed unless at that point plaintiff were permitted to sign the release form and depart. Since even the Overfield declaration suggests plaintiff was not put in contact with her attorney nor presented with the release form for signing but rather directed to a bench, presumably to await photographing and fingerprinting, a triable issue of fact exists as to whether the booking process was completed. If the paperwork was all that was going to be done, then plaintiff had been booked, was a prisoner, and defendant was immune from liability as a matter of law. If the booking process was not complete, plaintiff was at some intermediate stage between that of an arrestee and that of a person confined to a jail facility, and it is at least arguable that the county was not immune from liability. This seems particularly persuasive since "liability is the rule, immunity is the exception. [Citation omitted.]" (*Larson v. City of Oakland, supra,* 17 Cal.App.3d at pp. 97-98.) Therefore we conclude the trial court erred in granting summary judgment in favor of defendant since a triable issue of fact existed as to whether plaintiff was a prisoner within the meaning of sections 844 and 844.6 at the time of her injury.

II. *Summary Judgment Was Not Proper Because There Was a Triable Issue of Fact as to Whether Defendant Breached Its Duty to Provide Immediate Medical Care Pursuant to Section 845.6.*

 In response to defendant's contention that it was immune from liability pursuant to section 844.6 for injuries to a "prisoner," plaintiff alternatively contended her complaint had always made it clear she was seeking recovery under the affirmative duty created by section 845.6. The provisions of section 845.6 are an express exception to the immunity otherwise afforded by section 844.6. Section 845.6 provides: "Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but, except as otherwise provided by Sections 855.8 and 856, *a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care.* Nothing in this section exonerates a public employee who is lawfully engaged in the practice of one of the healing arts under any law of this state from liability for injury proximately caused by malpractice or exonerates the public entity from its obligation to pay any judgment, compromise, or settlement that it is required to pay under subdivision (d) of Section 844.6." (Italics added.)

In an early case construing this statute, the court upheld a jury verdict in favor of plaintiffs, the heirs of a decedent who had been kept in the county jail as "'too drunk to book.'" (*Hart v. County of Orange* (1967) 254 Cal.App.2d 302, 304 [62 Cal.Rptr. 73].) The decedent had been kept in the drunk tank all night and was hospitalized, in an unconscious state, the following morning. He died a few days later of a form of encephalitis. In upholding the jury verdict, the court said in part that "the factual question of actual or constructive knowledge of need for immediate care by an employee acting within the scope of his employment and of reasonable action to summon immediate medical care were properly questions for the jury . . . ." (*Id.*, at p. 307.)

This recognition that questions about jail personnel's actual or constructive knowledge of a prisoner's need for immediate medical care as well as the reasonableness of actions taken to meet this need are factual questions is consistent with the recent case of *Johnson v. County of Los Angeles* (1983) 143 Cal.App.3d 298, 317 [191 Cal.Rptr. 704]. There the court held that the immunities for failure to diagnose or prescribe treatment, granted by section 855.8, or to confine for mental illness or addiction, granted by section 856, were more limited than the general duty to summon medical aid created by section 845.6. The court concluded: "Though merely calling

a doctor or other trained health care provider to examine a prisoner may be sufficient in a hypothetical case, we need not, and do not, speculate on the nature of the medical care, if any, which here should have been summoned for Decedent. That, as well as the questions of Sheriff's actual or constructive knowledge of Decedent's need for immediate care, and of Sheriff's reasonable action to summon or not to summon such care, are questions of fact to be determined at trial. Thus, it was error to sustain the demurrer to Appellant's second count.''

■■■■■ Offered in support of defendant's motion for summary judgment, the declaration of Martha Overfield contains no indication whatsoever of what she knew or should have known about plaintiff's need for immediate medical care, nor does the declaration indicate what steps, if any, Overfield took to meet such need.[4] Defendant's rebuttal points and authorities includes excerpts from plaintiff's deposition, as well as photocopied pages from that deposition. These excerpts indicate only (1) plaintiff requested no assistance in "ambulating" to the bench to which she had been directed and (2) plaintiff's fall was apparently caused when her crutch slipped out from under her because of a wet spot on the floor.

Defendant relies primarily upon *Lucas* v. *City of Long Beach* (1976) 60 Cal.App.3d 341 [131 Cal.Rptr. 470] and *Kinney* v. *County of Contra Costa* (1970) 8 Cal.App.3d 761 [87 Cal.Rptr. 638]. In *Lucas* the court reversed a jury verdict in favor of the plaintiff on a cause of action based, in part, on section 845.6. The plaintiff's son had been confined in a moderately intoxicated condition. He later hanged himself in his cell. In reversing the jury verdict, the court stated in part: "Plaintiff, who had the burden of proof, offered no evidence as to what kind of medical care she claims should have been provided and more importantly she offered no evidence as to how such medical care could have prevented the death. Stephen was not in fact in need of immediate medical care and clearly lack of medical care did not 'cause' the death.

"True the continuous presence in the cell of a doctor, a nurse, or, for that matter, a policeman probably would have prevented the suicide. The jury apparently reasoned along these lines. Government Code section 845.6, however, in affixing liability for failure to summon 'immediate medical care' for a person in need thereof envisions liability for injury resulting from the failure to treat the physical condition requiring treatment and not for some other incidental injury that might have been prevented by the mere

---

[4]Although defendant has referred in its brief to Overfield's deposition, it does not appear from the record before this court that the deposition was lodged with the trial court prior to the time of defendant's motion for summary judgment, and thus it may not be considered by this court. (See, e.g., *McCreery* v. *Eli Lilly & Co., supra,* 87 Cal.App.3d at p. 82.)

presence of medical personnel. The jury's findings that it was negligence not to provide medical treatment and that that failure was the 'cause' of death are not supported by any evidence to be found in the record." (*Lucas v. City of Long Beach, supra,* 60 Cal.App.3d at p. 350.)

Similarly, in *Kinney v. County of Contra Costa, supra,* 8 Cal.App.3d 761, 770, the court affirmed a judgment of nonsuit in favor of defendant and commented on plaintiff's section 845.6 claim: "Government Code section 845.6 provides that a county is not liable for injury proximately caused by failure of an employee to furnish medical care to a jail prisoner, unless 'the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care.' A jail prisoner's request of an attendant for something for a headache cannot reasonably be deemed notice 'that the prisoner is in need of immediate medical care.' As to this issue plaintiff's contention was also unsupported by evidence." (Fn. omitted.)

It is significant that in both *Lucas v. City of Long Beach, supra,* and *Kinney v. County of Contra Costa, supra,* the court's rejection of claims pursuant to section 845.6 was based in large part upon failure of proof at trial. Although in these cases the plaintiffs were not able to prove their claim that the governmental entities knew or should have known of a need for immediate medical care and failed to take reasonable action to provide such care, these decisions are not inconsistent with those in *Hart v. County of Orange, supra,* 254 Cal.App.2d 302 and *Johnson v. County of Los Angeles, supra,* 143 Cal.App.3d 298. In all cases it seems abundantly clear that the issues of the governmental entity's actual or constructive knowledge of an individual's immediate need for medical care and of the reasonable action of the governmental entity to provide such care are questions of fact. Although a situation identical to that presented in *Kinney* or *Lucas* might support a decision on this issue as a matter of law, the circumstances in the instant case do give rise to a triable issue of fact which should not have been decided on a motion for summary judgment.

Clearly, plaintiff's failure to ask for medical care may be a factor in what the governmental entity or its agents knew or should have known, but it is not the sole fact to be considered. Section 845.6 places the burden on the governmental entity, not on the individual. It is a special statute which "*creates* liability, under certain circumstances, which does not otherwise exist under the common law. . . . [It creates] 'a newly-defined duty not applicable to private persons, created by the Legislature as a special burden to be borne by public entities under limited circumstances.' [Citation omitted.]" (*Johnson v. County of Los Angeles, supra,* 143 Cal.App.3d at p. 317.) The trier of fact should be permitted to determine, as a question

of fact, whether plaintiff's use of crutches and her apparently agitated, emotional, and weakened condition should have given rise to knowledge of her need for immediate medical care.

Moreover, we are not persuaded by defendant's argument that the issue of proximate causation can be decided as a matter of law. Although, as stated in *Lucas* v. *City of Long Beach, supra,* 60 Cal.App.3d 341 liability pursuant to section 845.6 is limited to injuries which result from the failure to provide medical care and not for some incidental injury, under the particular facts of this case it cannot be said, *as a matter of law,* that plaintiff's physical condition was not a substantial factor in her fall. Plaintiff's agitated and weakened condition could have been aggravated by standing through the booking procedure and could have contributed significantly to the possibility that plaintiff would slip and fall, whether or not the floor was wet. Similarly, it seems possible that summoning medical aid to relieve plaintiff's weakened condition, whether in the form of medical personnel to assist her or in the provision of a wheelchair, could have prevented plaintiff from falling. Regardless of how remote these possibilities may seem, the remoteness affects only plaintiff's difficulty of proof, i.e., plaintiff in the instant case may well have a difficult time proving her claim against the county. But difficulty in proof does not equate to resolution as a matter of law. We therefore conclude that a triable issue of fact does exist as to the county's liability under section 845.6 such that the trial court erred in granting summary judgment.

The judgment is reversed.

Woolpert, Acting P. J., and Best, J., concurred.