[No. F012981. Fifth Dist. May 24, 1991.]

LAWRENCE KRUSER et al., Plaintiffs and Appellants, v.
BANK OF AMERICA NT&SA, Defendant and Respondent.

## Counsel

Kimble, MacMichael & Upton, D. Tyler Tharpe and Michael J. Jurkovich for Plaintiffs and Appellants.

George W. Coombe, Jr., Winslow Christian and Louis J. Bachleder for Defendant and Respondent.

## Opinion

STONE (W. A.), J.—In this appeal we interpret the language of a federal banking regulation establishing the respective liabilities of a bank and a consumer for unauthorized electronic transfers of funds from the consumer's account.

### The Case

Appellants, Lawrence Kruser and Georgene Kruser, filed a complaint against Bank of America NT&SA (Bank) claiming damages for unauthorized electronic withdrawals from their account by someone using Mr. Kruser's "Versatel" card. The trial court entered summary judgment in favor of the

Bank because it determined appellants had failed to comply with the notice and reporting requirements of the Electronic Fund Transfer Act (EFTA). (15 U.S.C. § 1693-1693r; 12 C.F.R. § 205.6(b)(2).)

## THE FACTS

The facts are undisputed:

The Krusers maintained a joint checking account with the Bank, and the Bank issued each of them a "Versatel" card and separate personal identification numbers which would allow access to funds in their account from automatic teller machines. The Krusers also received with their cards a "Disclosure Booklet" which provided to the Krusers a summary of consumer liability, the Bank's business hours, and the address and telephone number by which they could notify the Bank in the event they believed an unauthorized transfer had been made.

The Krusers believed Mr. Kruser's card had been destroyed in September 1986. The December 1986 account statement mailed to the Krusers by the bank reflected a $20 unauthorized withdrawal of funds by someone using Mr. Kruser's card at an automatic teller machine. The Krusers reported this unauthorized transaction to the Bank when they discovered it in August or September 1987.

Mrs. Kruser underwent surgery in late December 1986 or early January 1987. She remained hospitalized for 11 days. She then spent a period of six or seven months recuperating at home. During this time she reviewed the statements she and Mr. Kruser received from the bank.

In September 1987, the Krusers received bank statements for July and August 1987 which reflected 47 unauthorized withdrawals, totaling $9,020, made from an automatic teller machine, again by someone using Mr. Kruser's card. They notified the bank of these withdrawals within a few days of receiving the statements. The Bank refused to credit the Krusers' account with the amount of the unauthorized withdrawals.

## DISCUSSION

We summarize briefly the general rules regarding summary judgment:

" ' "The matter to be determined by the trial court in considering such a motion is whether the defendant (or the plaintiff) has presented any facts which give rise to a triable issue. The court may not pass upon the issue itself. Summary judgment is proper only if the affidavits in support of the

moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue. . . . In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. . . .'" [Citation.]' " (*Zeilman* v. *County of Kern* (1985) 168 Cal.App.3d 1174, 1178 [214 Cal.Rptr. 746].)

The ultimate issue we address is whether, as a matter of law, the failure to report the unauthorized $20 withdrawal which appeared on the December 1986 statement barred appellants from recovery for the losses incurred in July and August 1987. Resolution of the issue requires the interpretation of section 909 of the EFTA (15 U.S.C. § 1693g) and section 205.6 of regulation E (12 C.F.R. § 205.6), one of the regulations prescribed by the Board of Governors of the Federal Reserve System in order to carry out the purposes of the EFTA. (15 U.S.C. § 1693a(3); 15 U.S.C. 1693b(a).)

In order to show the framework of responsibility for unauthorized transactions, we set out extensive portions of 15 United States Code Annotated section 1693g, with the provisions directly applicable to this case emphasized:

"(a) A consumer shall be liable for any unauthorized electronic fund transfer involving the account of such consumer only if the card or other means of access utilized for such transfer was an accepted card or other meanas[1] of access and if the issuer of such card, code, or other means of access has provided a means whereby the user of such card, code, or other means of access can be identified as the person authorized to use it, such as by signature, photograph, or fingerprint or by electronic or mechanical confirmation. In no event, however, shall a consumer's liability for an unauthorized transfer exceed the lesser of—

"(1) $50; or

"(2) the amount of money or value of property or services obtained in such unauthorized electronic fund transfer prior to the time the financial institution is notified of, or otherwise becomes aware of, circumstances which lead to the reasonable belief that an unauthorized electronic fund transfer involving the consumer's account has been or may be effected. Notice under this paragraph is sufficient when such steps have been taken as

---

[1]So in original. Probably should be 'means'."

may be reasonably required in the ordinary course of business to provide the financial institution with the pertinent information, whether or not any particular officer, employee, or agent of the financial institution does in fact receive such information.

*"Notwithstanding the foregoing, reimbursement need not be made to the consumer for losses the financial institution establishes would not have occurred but for the failure of the consumer to report within sixty days of transmittal of the statement (or in extenuating circumstances such as extended travel or hospitalization, within a reasonable time under the circumstances) any unauthorized electronic fund transfer or account error which appears on the periodic statement provided to the consumer under section 1693d of this title.* In addition, reimbursement need not be made to the consumer for losses which the financial institution establishes would not have occurred but for the failure of the consumer to report any loss or theft of a card or other means of access within two business days after the consumer learns of the loss or theft (or in extenuating circumstances such as extended travel or hospitalization, within a longer period which is reasonable under the circumstances), but the consumer's liability under this subsection in any such case may not exceed a total of $500, or the amount of unauthorized electronic fund transfers which occur following the close of two business days (or such longer period) after the consumer learns of the loss or theft but prior to notice to the financial institution under this subsection, whichever is less.

"(b) In any action which involves a consumer's liability for an unauthorized electronic fund transfer, the burden of proof is upon the financial institution to show that the electronic fund transfer was authorized or, if the electronic fund transfer was unauthorized, then the burden of proof is upon the financial institution to establish that the conditions of liability set forth in subsection (a) of this section have been met, and, if the transfer was initiated after the effective date of section 1693c of this title, that the disclosures required to be made to the consumer under section 1693c(a)(1) and (2) of this title were in fact made in accordance with such section.

". . . . . . . . . . . . . . . . . . . . . . . . .

"(d) Nothing in this section imposes liability upon a consumer for an unauthorized electronic fund transfer in excess of his liability for such a transfer under other applicable law or under any agreement with the consumer's financial institution.

"(e) Except as provided in this section, a consumer incurs no liability from an unauthorized electronic fund transfer." (Italics added.)

Section 205.6 of regulation E essentially mirrors 15 United States Code section 1693g, and in particular provides:

"(b) *Limitations on amount of liability.* The amount of a consumer's liability for an unauthorized electronic fund transfer or a series of related unauthorized transfers shall not exceed $50 or the amount of unauthorized transfers that occur before notice to the financial institution under paragraph (c) of this section, whichever is less, unless one or both of the following exceptions apply:

". . . . . . . . . . . . . . . . . . . . . . . . . .

"(2) *If the consumer fails to report within 60 days of transmittal of the periodic statement any unauthorized electronic fund transfer that appears on the statement, the consumer's liability shall not exceed the sum of*

"(i) *The lesser of $50 or the amount of unauthorized electronic fund transfers that appear on the periodic statement or that occur during the 60-day period, and*

"(ii) *The amount of unauthorized electronic fund transfers that occur after the close of the 60 days and before notice to the financial institution and that the financial institution establishes would not have occurred but for the failure of the consumer to notify the financial institution within that time.*

"(3) Paragraphs (b)(1) and (2) of this section may both apply in some circumstances. Paragraph (b)(1) shall determine the consumer's liability for any unauthorized transfers that appear on the periodic statement and occur before the close of the 60-day period, and *paragraph (b)(2)(ii) shall determine liability for transfers that occur after the close of the 60-day period.*

"(4) If a delay in notifying the financial institution was due to extenuating circumstances, such as extended travel or hospitalization, the time periods specified above shall be extended to a reasonable time." (Italics added.)

The trial court concluded the Bank was entitled to judgment as a matter of law because the unauthorized withdrawals of July and August 1987 occurred more than 60 days after appellants received a statement which reflected an unauthorized transfer in December 1986. The court relied upon section 205.6(b)(2) of regulation E.

■ Appellants contend the December withdrawal of $20 was so isolated in time and minimal in amount that it cannot be considered in connection with the July and August withdrawals. They assert the court's interpretation

of section 205.6(b)(2) of regulation E would have absurd results which would be inconsistent with the primary objective of the EFTA—to protect the consumer. (See 15 U.S.C. § 1693.) They argue that if a consumer receives a bank statement which reflects an unauthorized minimal electronic transfer and fails to report the transaction to the bank within 60 days of transmission of the bank statement, unauthorized transfers many years later, perhaps totaling thousands of dollars, would remain the responsibility of the consumer.

The result appellants fear is avoided by the requirement that the bank establish the subsequent unauthorized transfers could have been prevented had the consumer notified the bank of the first unauthorized transfer. (12 C.F.R. § 205.6(b)(2)(ii).) Here, although the unauthorized transfer of $20 occurred approximately seven months before the unauthorized transfers totaling $9,020, it is undisputed that all transfers were made by someone using Mr. Kruser's card which the Krusers believed had been destroyed prior to December 1986. According to the declaration of Yvonne Maloon, the Bank's Versatel risk manager, the Bank could have and would have canceled Mr. Kruser's card had it been timely notified of the December unauthorized transfer. In that event Mr. Kruser's card could not have been used to accomplish the unauthorized transactions in July and August. Although appellants characterize this assertion as speculation, they offer no evidence to the contrary.

■ In the alternative, appellants contend the facts establish that Mrs. Kruser, who was solely responsible for reconciling the bank statements, was severely ill and was also caring for a terminally ill relative when the December withdrawal occurred. Therefore, they claim they were entitled to an extension of time within which to notify the Bank. They argue these extenuating circumstances as recognized in both EFTA, 15 United States Code section 1693g(a)(2) and regulation E, section 205.6(b)(4) present a question of fact about the reasonableness of the time in which they gave notice.

The evidence appellants rely upon indicates in late 1986 or early 1987 Mrs. Kruser underwent surgery and remained in the hospital for 11 days. She left her house infrequently during the first six or seven months of 1987 while she was recuperating. Mrs. Kruser admits, however, she received and reviewed bank statements during her recuperation. Therefore, we need not consider whether Mrs. Kruser's illness created circumstances which might have excused her failure to notice the unauthorized withdrawal pursuant to the applicable sections. She in fact did review the statements in question.

Appellants cite no evidence in support of their contention Mrs. Kruser was also caring for her ill relative during the relevant time period. We need not

determine whether that fact might have excused her failure to notice the unauthorized withdrawal.

Moreover, nothing in the record reflects any extenuating circumstances which would have prevented Mr. Kruser from reviewing the bank statements. The understanding he had with Mrs. Kruser that she would review the bank statements did not excuse him from his obligation to notify the bank of any unauthorized electronic transfers.

In *Sun 'n Sand, Inc.* v. *United California Bank* (1978) 21 Cal.3d 671 [148 Cal.Rptr. 329, 582 P.2d 920], the Supreme Court held in the case of a dishonest employee who altered her employer's checks to her benefit:

"We made clear in *Basch* v. *Bank of America* (1943) *supra*, 22 Cal.2d 316, 327-328, that an employer is charged with the knowledge that an honest agent would have gained in the course of a reasonably diligent examination; we explained that 'this rule reasonably imposes upon the depositor the further duty of properly supervising the conduct of his trusted employee . . . .' Sun 'n Sand's failure to discover its mistake within three years of the issuance of the first three checks thus derived from its failure to discharge with reasonable care its duty to supervise its employees." (*Id.* at p. 702.)

Although the record is clear Mrs. Kruser did nothing dishonest which led to the failure to report the unauthorized transaction, we see no distinction between the employer's inability to avoid liability by claiming it delegated that duty and Mr. Kruser's inability to avoid liability by claiming he delegated to his wife his duty to discover unauthorized withdrawals on his Versatel card.

■ Finally, appellants contend evidence of mailing the December bank statement was insufficient to establish "transmittal" as that word is used in section 205.6(b)(2) of regulation E. They contend actual knowledge is required and rely on the Federal Reserve Board's official staff interpretation of regulation E relating to the loss or theft provision of section 205.6(b)(1). (See official staff interpretation, 12 C.F.R. pt. 205, supp. II (Jan. 1, 1987 ed.) p. 125.)

Section 205.6(b)(1) requires the consumer to notify the bank "within 2 business days after learning of the *loss or theft* of the access device . . . ." (Italics added.) The question addressed by the staff comment is whether the consumer's receipt of a periodic statement that reflects unauthorized transfers is sufficient to establish knowledge of loss or theft of an access device. The comment provides:

"Receipt of the periodic statement reflecting unauthorized transfers may be considered a factor in determining whether the consumer had knowledge of the loss or theft, but cannot be deemed to represent conclusive evidence that the consumer had such knowledge." (Official staff interpretation, 12 C.F.R. pt. 205, supp. II, (Jan. 1, 1987 ed.) § 205.6(b), p. 125.)

Here we are not concerned with the loss or theft of an access device. Rather, our question is whether the Bank has established the loss of $9,020 in July and August 1987 would not have occurred but for the failure of appellants to report timely the $20 unauthorized transfer which appeared on the December 1986 statement. (15 U.S.C § 1693g(a)(2).)

Appellants cite no authority which supports their claim the consumer must not only receive the statement provided by the bank, but must acquire actual knowledge of an unauthorized transfer from the statement. Such a construction of the law would reward consumers who choose to remain ignorant of the nature of transactions on their account by purposely failing to review periodic statements. Consumers must play an active and responsible role in protecting against losses which might result from unauthorized transfers. A banking institution cannot know of an unauthorized electronic transfer unless the consumer reports it.

The Bank has established that the losses incurred in July and August 1987 as a result of the unauthorized electronic transfers by someone using Mr. Kruser's Versatel card could have been prevented had appellants reported the unauthorized use of Mr. Kruser's card as reflected on the December 1986 statement. The Bank is entitled to judgment as a matter of law.

### DISPOSITION

We affirm the judgment and award costs on appeal to respondent.

Best, P. J., and Buckley, J., concurred.