[No. B046303. Second Dist., Div. Five. May 30, 1991.]

DOUGLAS LADD, Plaintiff and Appellant, v.
DART EQUIPMENT CORPORATION et al., Defendants and
Respondents.

## COUNSEL

L. Edmund Kellogg, Michael C. Moustakas, Woodward & Walsh and Ai Woodward for Plaintiff and Appellant.

Stockdale, Peckham & Werner and Delph R. Wilson for Defendants and Respondents.

## OPINION

**TURNER, P. J.—**

### I. INTRODUCTION

Plaintiff Douglas Ladd (plaintiff) appeals from an order of dismissal for failure to serve process within two years. (Code Civ. Proc., § 583.420, subd. (a)(1).)[1] The court initially granted the discretionary dismissal motion. Plaintiff filed a reconsideration motion. (§ 1008, subd. (a).) The court granted the reconsideration request and, upon reconsideration, once again granted the dismissal motion. We conclude that the trial court acted within its discretion in granting the initial dismissal motion heard on October 9, 1989, and in

___

[1]Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

granting the reconsideration request. Those orders are affirmed. However, because we determine that after granting the reconsideration request on November 14, 1989, the trial court did not exercise its discretion, we reverse the dismissal order of November 14, 1989, and remand the case to the superior court with directions to exercise its discretion in ruling on the dismissal motion.

## II. ISSUES ON APPEAL

■ Plaintiff contends the trial court abused its discretion in dismissing its complaint in that; 1) the plaintiff made an adequate showing that the delay in service was excusable; 2) there was no actual prejudice to the defendants as a result of the delay in service; 3) the court earlier had denied its motion, sua sponte, to dismiss the action; and 4) a compelling policy favors disposition of a case by trial on the merits.[2]

## III. FACTS

The relevant facts are contained in the appellant's appendix. First, the appendix contains documents which reflect the dates upon which the complaint was filed and served as well as relevant court events. Second, certain facts were elicited in connection with a motion to dismiss heard on October 10, 1989, and a reconsideration motion heard on November 14, 1989.

### A. *Proceedings Prior to the Dismissal Motion*

Plaintiff filed a complaint on November 11, 1986, against his employer, Dart Warehouse Corporation and three closely related but legally separate entities, Dart Equipment Corporation, Dart Rental Systems, and Dart Transportation Service. Plaintiff sustained personal injuries when the forklift he was driving fell through the floor of a trailer.

Twenty-six months after plaintiff filed the complaint, the superior court on January 4, 1989, served, on its own motion, a notice of intention to dismiss the action for failure to have brought the action to trial within two years after it was filed pursuant to section 583.420, subdivision (a)(2)(B).[3] At the hearing on the court-initiated dismissal proceedings, Commissioner Donald Pike

---

[2] Plaintiff also contends that the trial court failed to apply the standards set forth in rule 373(e), California Rules of Court. This objection was not interposed in the trial court and may not be raised for the first time on appeal. (*Doers* v. *Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184-185, fn. 1 [151 Cal.Rptr. 837, 588 P.2d 1261].) In any event, as will be noted, the trial court weighed the competing considerations embodied in rule 373(e) when it granted the dismissal motion on October 9, 1989.

[3] The relevant provisions of section 583.420, subdivision (a)(2)(B) provide: "The court may not dismiss an action pursuant to this article . . . except after one of the following condi-

declined to dismiss the case but ordered that the at-issue memorandum or judgment to be filed by May 1, 1989.

The first amended complaint was served on defendant Dart Warehouse Corporation on April 13, 1989. On the same date substituted service of the first amended complaint was effected on defendant Dart Equipment Corporation; although pursuant to section 415.20, subdivision (a), service was not "complete" until April 23, 1989. On April 25, 1989, the court granted plaintiff's motion to extend the time to file the at-issue memorandum until June 15, 1989. The sequence of events that followed after service of the complaint is unclear. This is due in part to the failure of the parties to comply with rule 5.1(c)(1) of the California Rules of Court which requires that documents in the appellant's appendix "be conformed to show the date of filing in the trial court, if the clerk's date-stamp does not appear on them." However, as best as can be determined from the appellant's appendix, on May 19, 1989, defendant Dart Warehouse Corporation served a "first amended answer" to plaintiffs' first amended complaint. On June 27, 1989, an answer to the complaint was served. The top left hand portion of the first page of the answer to the complaint stated that defense counsel was appearing for Dart Equipment Corporation, Dart Warehouse Corporation, and Dart Transportation Service. However, the body of the answer stated that Dart Transportation Service was the party answering the complaint. A status conference pursuant to the Los Angeles Superior Court delay reduction rules was set for October 4, 1989.

### B. *The Dismissal Motion*

On August 21, 1989, counsel for Dart Equipment Corporation, Dart Warehouse Corporation, and Dart Transportation Service filed a motion to dismiss pursuant to section 583.410 and section 583.420, for failure to serve the first amended complaint until April 13, 1989, nearly 29 months after the commencement of the action.[4] Precisely who was moving to dismiss the lawsuit was unclear from the face of the moving papers. The notice failed to

---

tions has occurred: . . . [¶] (2) The action is not brought to trial within the following times: [¶] (B) Two years after the action is commenced against the defendant if the Judicial Council by rule adopted pursuant to Section 583.410 so prescribed for the court because of the . . . court calendar or for other reasons affecting the conduct of litigation or the administration of justice." As will be noted, when the present case was ultimately dismissed on November 14, 1989, after reconsideration of the dismissal motion granted on October 10, 1989, the basis of the dismissal was not section 583.420, subdivision (a)(2)(B). Rather, the case was dismissed on November 14, 1989, pursuant to section 583.420, subdivision (a)(1).

[4]Section 583.420, subdivision (a)(1) provides in connection with a failure to timely serve the complaint as follows: "The court may not dismiss an action pursuant to this article for delay in prosecution except after one of the following conditions has occurred: [¶] (1) Service is not made within two years after the action is commenced against the defendant."

identify the moving defendants and stated the "grounds" for the motion were "that the plaintiff failed to effect service on these defendant [*sic* ] within two years after commencement of the action." As the parties did in superior court, we construe the motion to have been filed by all three defendants listed in the upper left hand of the first page of the moving papers. In support of the dismissal motion, defendants submitted the following declaration of their counsel, Franz Fuestsch, which stated in relevant part: "This action arises out of an [incident] involving the loading and/or unloading of a truck trailer with a fork lift. The incident occurred on or about March 13, 1986 in the City and County of Los Angeles. [¶] The complaint was filed on November 21, 1986. Dart Equipment Corporation was served on April 13, 1989; nearly 29 months after the filing. The summons and complaint were served on Dart Transportation Service on June 14, 1989; nearly 31 months after the filing." This was the extent of the evidentiary showing made in connection with the dismissal motion. The principal case relied upon by defendants was *Trailmobile, Inc.* v. *Superior Court* (1989) 210 Cal.App.3d 1451, 1456-1458 [259 Cal.Rptr. 100].

In opposition to the dismissal motion, plaintiff's new counsel, Michael C. Moustakas (Moustakas), filed a declaration. Moustakas stated that the accident in which the plaintiff sustained injuries occurred on March 13, 1986, and suit was filed on November 21, 1986. Service was "effected on the [d]efendants" on April 13, 1989. Moustakas indicated that service was "delayed purposely by the Plaintiffs [*sic* ] due to the fact that the case was not in a position to move forward in that Plaintiff had a pending Workers' Comp [*sic* ] Claim which ultimately was settled for $32,500.00 on September 26, 1988." Additionally, the Moustakas declaration stated that prior to the time defendants were served, there was a hearing on the notice by the court on its own motion to dismiss the case for lack of diligent prosecution. Moustakas said that he had "appeared in Department 1 on February 22, 1989 . . . to oppose the Motion." Moustakas indicated that the court was satisfied with his explanation, did not dismiss the case, but ordered that defendants be served with the at issue memorandum to be filed by June 15, 1989. Moustakas stated, "Plaintiff has complied with all orders of the Court."[5] Finally, the Moustakas declaration detailed the discovery conducted as of September 27, 1989. He stated, "Defendants have instituted Discovery

[5]Actually, on February 22, 1989, the court ordered that the at-issue memorandum be filed by May 1, 1989, not the June 15 date set forth in the Moustakas declaration. Additionally, plaintiff never complied with the order to have the at-issue memorandum on file by May 1, 1989. Rather, plaintiff delayed serving the first amended complaint until April 13, 1989. Plaintiff filed a motion to extend the time to file the at-issue memorandum and secured court permission to file the at-issue memorandum by June 15, 1989. In other words, plaintiff never complied with the initial court order to have the at-issue memorandum filed by May 1, 1989, and had to obtain court permission to extend that time until June 15, 1989. The only reason that the at-issue memorandum was not filed in compliance with the original order was that plaintiff never served the complaint on defendant Dart Warehouse Corporation until April 13,

and Plaintiff has responded by answering Interrogatories, responding to Request to Produce, and responding to Request for Production [*sic*]."

On October 10, 1989, Judge John Zebrowski granted the dismissal motion as to defendants Dart Equipment Corporation and Dart Transportation Service. The court concluded that "service was 'delayed purposely' until a worker's compensation matter was settled." The court found that this was not a sufficient reason for failure to timely serve the complaint although it may have been an adequate justification for failure to promptly prosecute. As to Dart Warehouse Corporation, the court concluded that plaintiff had voluntarily dismissed the complaint. A notice of ruling was prepared although the evidentiary record on appeal fails to indicate that it was ever served.[6]

## C. *The Reconsideration Motion*

### 1. *The Moving Papers*

On October 20, 1989, plaintiff filed a reconsideration motion from the order of dismissal. Two declarations were submitted in support of the reconsideration motion. The first declaration was that of L. Edmund Kellogg (Kellogg) while another declaration was filed by Moustakas. The Kellogg declaration indicated that plaintiff's employer was defendant Dart Warehouse Corporation.[7] Kellogg stated: "Dart Warehouse Corporation, the Plaintiff's employer is one of a complex group of entities engaged in the warehouse and transportation business. Those entities include Dart Warehouse Corporation, (Plaintiff's employer), Dart Transportation Service, Dart Equipment Corporation, and Dart Rental Systems, all of whom are Defendants in the instant action." Kellogg said that the various entities "were small closely held corporations controlled by the same, or almost the same officers with the businesses of each of the corporations being run from the

---

1989, which extended the time for that defendant to answer until May 13, 1989. As to defendant Dart Equipment Corporation, only substituted service was effected on April 13, 1989, which extended the time to answer until June 2, 1989. No at-issue memorandum could be filed prior to the time that these two defendants had answered the first amended complaint.

[6]The colloquy between the court and Moustakas during the hearing on the motion involved a discussion of delay in service, diligence in effecting service, absence of settlement negotiations, an inability on defendants' part to conduct discovery while the suit remained unserved, the previously pending workers' compensation matter, and the fact that had the case been promptly served it may very well have resolved by the October 10, 1989, hearing date. All of these considerations are, in one way or another, factors listed in California Rules of Court, rule 373(e). Plaintiff's argument, raised for the first time on appeal, that the trial court did not consider the factors set forth in rule 373(e) of the court rules is without merit.

[7]This is the entity which was apparently dismissed voluntarily on July 7, 1989.

same address." Additionally, all of the entities were insured by the same insurance company.

The Kellogg declaration also referred to two letters. The first letter was from the law firm of Ibold & Anderson who was representing plaintiff's employer in the workers' compensation matter and was dated May 29, 1987, which was six months and eight days after suit was filed. In that letter, authored by attorney Michael J. Garey, the subject was raised concerning the present lawsuit. The letter requested that a dismissal with prejudice of the lawsuit be filed as to Dart Warehouse Corporation which was plaintiff's employer. The letter raised the point that plaintiff's exclusive remedy against the employer would be "through the Workers' Compensation Appeals Board." The letter further stated: "In regard to the remaining named Defendants, all DART CORPORATIONS, please advise if and when you effectuate service upon same. It is possible that this office may be defending same, as well as intervening on behalf of the Workers' Compensation Insurance carrier. For these reasons, I am interested in the status and progress of this action."

In response to the May 29, 1987, letter, Kellogg mailed a letter to the law offices of Ibold & Anderson dated June 4, 1987. In that letter, Kellogg stated that he had named Dart Warehouse Corporation in "order to preserve my clients [sic] rights, for thirds [sic] party rights, in regards to the action I have named everybody in the Complaint." Kellogg stated that after "initial discovery" was completed, he would be glad to file a dismissal request as to Dart Warehouse Corporation. Additionally, Kellogg stated: "The service on this matter will be effected as soon as Mr. Ladd's condition is P[ermanent] & S[tationary] so that we know what the situation is and don't get to [sic] early a Trial date." Kellogg indicated that because the other defendants were "represented by Farmers Insurance Company" the law firm of Ibold & Anderson may wish to "substitute out on the matter." Kellogg indicated that he did not know which law firm was assigned to defend the present case and that he was unable to "help . . . further in regards to that aspect of it." However, Kellogg promised to keep the law firm of Ibold and Anderson "advised of the progress of this case and look forward to amicable [sic] working together on the matter."

Moustakas's declaration indicated that on October 4, 1989, a status conference was held in Department 3 of superior court. At that status conference, pursuant to the local delay reduction rules, discovery cutoff dates as well as a final status conference date was set. Moustakas said that the status conference was evidence of the fact that the case was moving toward trial. Moustakas stated that he raised the point "by way of oral argument" at the

October 10, 1989, hearing at which the dismissal motion was granted, that the status conference had been held on October 4, 1989, but he did not present it in his "responding papers" because he did not know whether the status conference would be continued pending a determination of the dismissal motion on October 10, 1989.

### 2. *The Opposition to the Reconsideration Motion*

The opposition to the reconsideration motion contained a brief declaration by Delph R. Wilson, one of defendants' attorneys. The declaration restated the dates upon which the lawsuit was filed as well as the date of service of the summons and complaint. Additionally, the declaration noted that the lawsuit had been dismissed on October 10, 1989, and that there were no new facts in support of the reconsideration motion.

### 3. *The Reply to the Opposition*

On November 9, 1989, Kellogg and Moustakas filed additional declarations. Kellogg stated that he had spent 10 years as a lawyer representing defendants in personal injury litigation and 20 years representing plaintiffs. Kellogg set forth his experiences in connection with third party personal injury litigation where there was a pending workers' compensation case. Normally, the workers' compensation case would be resolved when the plaintiff's injuries became permanent and stationary. Then the litigation in connection with the third party claim would ensue. As to plaintiff's workers' compensation case, it was not concluded until the "first part of October, 1988." As a result of the settlement of the workers' compensation case, plaintiff received $32,500 which Kellogg noted constituted a lien against any third party claim that plaintiff may have against tortfeasors other than his employer.

Kellogg stated that the defendants in the present case were insured by Farmers Insurance Group and had full access and availability to the facts concerning plaintiff's injuries. Also, Kellogg said that the defendants in the present case "could have answered the complaint at any time . . . ." Kellogg argued in his declaration that there had been no substantial prejudice to anybody and that the workers' compensation carrier could intervene in this lawsuit in order to protect its lien interest. Kellogg noted that substantial discovery had been completed and the dates had been set for the completion of discovery as well as a final status conference. Kellogg concluded: "I would think that in the interest of justice, the Courts of this State want justice for accident victims. I believe one of the [paramount] standards of justice in this State is that an individual is entitled to have his case tried on its merits."

In the reply to the opposition, Moustakas filed another declaration. Moustakas attempted to set forth the new facts which justified reconsideration. Moustakas noted that there had been a status conference which had been held six days before the October 10, 1989, hearing on the dismissal motion. Furthermore, in the Kellogg declaration attached to the reconsideration motion, reference was made to the closely held nature of the various corporations and the fact that they were all operated by the "same or almost the same officers." Moustakas stated that at the time of the October 10 hearing, he was not aware of the corporate organization. Furthermore, Moustakas stated that he was brought into the present case by Kellogg in an associate counsel status to "prosecute the third party matter." Moustakas noted that he did not handle the present lawsuit in its initial stages and did not have the workers' compensation file or knowledge of Kellogg's communications with the law firm of Ibold & Anderson at the time of the October 10 hearing. Moustakas noted the he did not share office space with Kellogg nor work with him on a regular basis but handled cases when Kellogg's caseload or health required that associate counsel be utilized.

On November 14, 1989, the trial court granted the reconsideration request and proceeded to allow relitigation of the dismissal motion. During the hearing, the court stated, "I'm really having a hard time figuring out how I would distinguish this from the *Trailmobile [Inc.* v. *Superior Court, supra,* 210 Cal.App.3d at pp. 1455-1458] case." At another point the court noted: "Well, I think you need to bare [*sic*] in mind that—while the system is supposed to produce justice—justice and equity it doesn't produce whatever I personally happen to think justice and equity is. It produces justice and equity according to the system and I've got a system here that has this *Trailmobile* case in it and I can't distinguish this case from *Trailmobile*; and *Trailmobile* reversed an order that they refused to dismiss a case . . . under circumstances that were not quite as bad as this." At another point during the hearing, the court said, "Well, I don't really see how I can avoid the—the ruling of *Trailmobile*, so I think what you're going to need to do is get the appellate court to say that they're not going to follow *Trailmobile* or that *Trailmobile* is wrong or is there some way to distinguish this from *Trailmobile*." Later during the discussion, the court said, "I'm bound by that ruling; so let's have the responding party give notice and we'll have to let the appellate court take it from here." Upon reconsideration, the dismissal motion was once again granted. The court stated in its written analysis: "New facts are simply that plaintiff's counsel corresponded with worker's compensation counsel. Not a case in which direct notice was given to defendants, with ensuing negotiation, retention of evidence, etc. *Trailmobile* controls." On November 14, 1989, the court signed the dismissal order.

## IV. DISCUSSION

### A. *The Discretionary Dismissal Statute and the Standard of Review*

Section 583.410, subdivision (a) provides in relevant part that "[t]he court may in its discretion dismiss an action for delay in prosecution . . . on its own motion or on motion of the defendant if to do so appears to the court appropriate under the circumstances of the case." As noted previously, section 583.420, subdivision (a) specifies that the trial court may dismiss an action where service of the complaint was not made within two years after the action was commenced against the defendant. In evaluating whether to exercise its discretionary dismissal powers, a trial court is to consider the factors set forth in rule 373(e) of the California Rules of Court.[8] (*Salas v. Sears, Roebuck & Co.* (1986) 42 Cal.3d 342, 349 [228 Cal.Rptr. 504, 721 P.2d 590].) ■ The competing considerations which a trial court must consider when exercising discretion to dismiss were described by the Court of Appeal in *Schumpert v. Tishman Co.* (1988) 198 Cal.App.3d 598, 602-603 [243 Cal.Rptr. 810], as follows: "It has been aptly remarked that section 583.420 and the other dismissal-for-delay statutes serve a dual purpose: '[O]ne is effectually the same as that of statutes of limitations—they are both statutes of repose, seeking to discourage stale claims "to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." [Citations.] Secondly, the dismissal section is designed to compel reasonable diligence in the prosecution of actions, thereby expediting the administration of justice. [Citations.]' [Citations.] Balanced against these considerations is, of course, the strong public policy which seeks to dispose of litigation on the merits rather than on procedural grounds. [Citations.] Although that policy is generally viewed as more compelling than the one seeking to promote prompt prosecution [citations], it will not prevail unless the plaintiff meets his [or her] burden of establishing excusable delay.

---

[8]California Rules of Court, rule 373(e) provides: "In ruling on the motion the court shall consider all matters relevant to a proper determination of the motion, including the court's file in the case and the affidavits and declarations and supporting data submitted by the parties and, where applicable, the availability of the moving party and other essential parties for service of process; the diligence in seeking to effect service of process; the extent to which the parties engaged in any settlement negotiations or discussions; the diligence of the parties in pursuing discovery or other retrial proceedings, including any extraordinary relief sought by either party; the nature and complexity of the case; the law applicable to the case, including the pendency of other litigation under a common set of facts or determinative of the legal or factual issues in the case; the nature of any extensions of time or other delay attributable to either party; the condition of the court's calendar and the availability of an earlier trial date if the matter was ready for trial; whether the interests of justice are best served by dismissal or trial of the case; and any other fact or circumstance relevant to a fair determination of the issue. The court shall be guided by the policies set forth in section 583.130 of the Code of Civil Procedure."

[Citation.]" Once a complaint is not served within the two-year period, a plaintiff is required to make some "showing of excusable delay." (*Salas* v. *Sears, Roebuck & Co., supra,* 42 Cal.3d at p. 347; *Clark* v. *Stabond Corp.* (1987) 197 Cal.App.3d 50, 55 [242 Cal.Rptr. 676].)

■ When the trial court has ruled on a discretionary dismissal motion, on appeal, " ' "unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power." ' " (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 331 [216 Cal.Rptr. 718, 703 P.2d 58].) In *Salas* v. *Sears, Roebuck & Co., supra,* 42 Cal.3d at page 346, the Supreme Court held that a discretionary dismissal order would only be set aside " ' " ' in cases of manifest abuse.' " ' " The Supreme Court has held, " 'The burden is on the party complaining to establish an abuse of discretion . . . .' " (*Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 566 [86 Cal.Rptr. 65, 468 P.2d 193].) Several Courts of Appeal have held, "A dismissal for dilatory prosecution will be more closely scrutinized on review than one denying the motion." (*Wong* v. *Davidian* (1988) 206 Cal.App.3d 264, 268 [253 Cal.Rptr. 675]; *Schumpert* v. *Tishman Co., supra,* 198 Cal.App.3d at p. 603.)

However, an appellate court in passing upon a discretionary dismissal motion must recognize that even if it disagrees with the trial court's exercise of discretion, if there was no abuse of discretion, the dismissal order must be upheld. In a discretionary dismissal case, *Wong* v. *Davidian, supra,* 206 Cal.App.3d at page 269, the Court of Appeal reiterated: " '[W]e must be constantly aware of the different functions performed by the superior court and ourselves. Unless, ultimately, each case of this nature is to be decided by the Court of Appeal as if no trial court had ever acted on the [motion], we must be careful to preserve the area of the superior court's discretion and we must do this in fact, as well as in words. It is easy enough to give the appearance that the respective functions of the two courts are being pre- served: all we need do is label as an "abuse of discretion" any ruling with which we happen to disagree.' [¶] As stated in *San Bernardino City Unified School Dist.* v. *Superior Court* (1987) 190 Cal.App.3d 233, 241 [ ], '[w]hile we may have ruled differently had we heard the motion, the appellate court may not substitute its own view as to the proper decision. [Citation.]' "

B. *The October 10, 1989, Dismissal Order*

1. *The Trial Court Did Not Abuse Its Discretion on October 10, 1989*

■ The trial court concluded that plaintiff, who had delayed prosecution beyond the discretionary deadlines, failed to make some showing that the

lack of activity was excusable. (*Salas* v. *Sears, Roebuck & Co., supra*, 42 Cal.3d at p. 347.) In this case, plaintiff's counsel deliberately refused to serve the complaint until nearly 29 months after the commencement of the lawsuit. The sole reason given for failing to serve within the two years in the words of plaintiff's new attorney, Moustakas, was that service was "delayed purposely . . . due to the fact that the case was not in a position to move forward in that Plaintiff had a pending worker's [compensation] claim" which was settled on September 26, 1988. The date upon which the worker's compensation matter was resolved was nearly seven weeks prior to the expiration of the two-year deadline for service of process. Despite a seven-week window of opportunity within which the complaint could have been served, plaintiff's counsel failed to make any effort to serve the complaint until after receiving a notice by the superior court seeking to dismiss the case on the court's own motion. The hearing on that motion occurred on February 22, 1989. There was an additional seven-week delay before a first amended complaint was served. To further complicate matters, in a letter dated June 4, 1987, plaintiff's counsel indicated that he would only serve the complaint once plaintiff's condition became permanent and stationary so as to avoid getting too early a trial date. The deliberate refusal to serve the complaint did not constitute diligence.

Furthermore, the trial court reasonably could have concluded that the lack of activity was not excusable. (*Salas* v. *Sears, Roebuck & Co., supra*, 42 Cal.3d at p. 347.) The fact that there was other litigation pending, the worker's compensation proceeding, did not justify failing to serve the complaint. In *Danielson* v. *ITT Industrial Credit Co.* (1988) 199 Cal.App.3d 645, 652-654 [245 Cal.Rptr. 126], the Court of Appeal held that pending bankruptcy proceedings did not justify a failure to serve a complaint when the plaintiffs filed a chapter Seven (11 U.S.C. § 701 et seq.) petition.

Additionally, the fact that plaintiff's employer and its insurance carrier were given notice of the complaint does not justify the unreasonable delay in serving the first amended complaint. In *County of Los Angeles* v. *Superior Court* (1988) 203 Cal.App.3d 1205, 1212 [250 Cal.Rptr. 481], the Court of Appeal held, as a matter of law, that service of a claim pursuant to the Tort Claims Act (Gov. Code, § 905 et seq.) did not. constitute a reasonable explanation for the failure to serve the complaint within two years. In other words, notice of the basis of the lawsuit by means of a tort claim filed directly with the defendant, a public entity, did not constitute a proper justification for delay in serving the complaint. In *Trailmobile, Inc.* v. *Superior Court, supra*, 210 Cal.App.3d at page 1456, the Court of Appeal held that notification by a first defendant to a second defendant did not justify the failure to timely serve the second defendant. Accordingly, none of the purported justifications advanced by plaintiff in this case constitutes as a

matter of law a "showing of excusable delay." (*Salas* v. *Sears, Roebuck & Co., supra*, 42 Cal.3d at p. 347.)

### 2. *The Prejudice Issue*

Plaintiff contends that there was an inadequate showing of prejudice resulting from the delay. ■ However, on appeal from a dismissal order, when a trial court finds that the period of delay has been without sufficient justification, there is no requirement that prejudice be shown in the face of unjustifiable delay. (*Blank* v. *Kirwan, supra*, 39 Cal.3d at p. 332; *Wong* v. *Davidian, supra*, 206 Cal.App.3d at p. 270; *Schumpert* v. *Tishman Co., supra*, 198 Cal.App.3d at pp. 605-606; *Longshore* v. *Pine* (1986) 176 Cal.App.3d 731, 735-736 [222 Cal.Rptr. 364].)

### 3. *The Trial Court's Prior Ruling Declining to Dismiss the Action on February 22, 1989, Was Not Binding When a Motion Was Filed on Behalf of Defendants*

■ In the trial court, plaintiff contended that the order of February 22, 1989, in which Commissioner Pike declined to dismiss the case on its own motion, was later binding in the face of defendants' motion before Judge Zebrowski. Of course, Commissioner Pike's ruling on February 22, 1989, was in connection with a notice by the superior court on its own motion that it was intending to dismiss the case pursuant to section 583.420, subdivision (a)(2)(B) which provides that a court may dismiss a case for failure to bring it to trial within two years. Defendants had not even been served when Commissioner Pike chose not to dismiss the case. The dismissal motion brought by defendants which was granted initially on October 10, 1989, and finally upon reconsideration on November 14, 1989, was premised upon the failure to timely serve the complaint pursuant to section 583.420, subdivision (a)(1). The ruling in February involved different issues than the motion which resulted in the orders on October 10 and November 14, 1989. Finally, apart from the different dismissal provisions before the court in February and later in October and November, the February order declining to dismiss was not a binding order and was subject to reconsideration. (*Blue Mountain Development Co.* v. *Carville* (1982) 132 Cal.App.3d 1005, 1013 [183 Cal.Rptr. 594]; *Travelers Ins. Co.* v. *Superior Court* (1977) 65 Cal.App.3d 751, 760 [135 Cal.Rptr. 579].)

The February 22, 1989, order arose in a context which warrants special comment. The Los Angeles Superior Court regularly reviews its pending caseload to determine whether there are cases which are not being pursued by a plaintiff. In order for a court in a metropolitan county to properly manage an inventory of cases, it is essential to identify those cases which the

parties have settled or abandoned. The remaining cases can then be set for status conferences and trial thereby reducing pretrial delay, costs to the public, and unwarranted attorney fees and costs to the parties. Extensive research and experience indicates that absent such calendar control mechanisms, the public interest is adversely affected by delay which results when trial courts fail to accept their responsibility to monitor cases as required by section 2 of the Standards of Judicial Administration.[9]

Prior to the February 22, 1989, proceeding where the trial court declined to dismiss the present case and ordered that the complaint be served, several hundred plaintiffs in languishing lawsuits were sent a notice of intention to dismiss the case on the court's own motion pursuant to section 583.420, subdivision (a)(2)(B). On February 22, 1989, as well as on other occasions when this calendar control mechanism is utilized, several hundred cases are placed on calendar and the files are not in the courtroom. Therefore, at the hearing in Department One, a commissioner only has a copy of the notice of intention to dismiss before her or him. The attorney for the plaintiff at such a hearing usually indicates that the plaintiff desires to proceed with the lawsuit. Normally, as occurred in the present suit, the defendant is not present because service of process has not occurred. If a plaintiff does not appear, the case is dismissed.

To adopt plaintiff's position that no discretionary dismissal could occur after the calendar control mechanism in this case was utilized creates several problems. First, such a rule of law would violate established legal precedent permitting a court to reconsider his prior nonfinal rulings. Second, at the hearing, the defendant is normally not present because service of process has not occurred. For the commissioner to do anything other than verify that the plaintiff desires to proceed with the suit would draw the court into an adversary relationship with the plaintiff. Furthermore, the court would be required to become an advocate for the defendant, which is inconsistent with the normal judicial role. No doubt, there are occasions were an adversary relationship properly develops between the court and a party; however, this is not such a situation where the public interest is served by the court assuming the responsibility of protecting the interest of an unserved party.

Third, when determining whether to dismiss, the trial court must consider the factors listed in rule 373(e) of the California Rules of Court. In the

---

[9]Section 2 of the Standards of Judicial Administration states: "Trial courts should be guided by the general principle that from the commencement of litigation to its resolution, whether by trial or settlement, any elapsed time other than reasonably required for pleadings, discovery, and court events is unacceptable and should be eliminated. To enable the just and efficient resolution of cases the court, not the lawyers or litigants, should control the pace of litigation. A strong judicial commitment is essential to reducing delay and, once achieved, maintain a current docket."

absence of a defendant to articulate these issues, it is very difficult for a court to exercise discretion intelligently. Finally, there would be an enormous burden on the superior court clerk if a full hearing was necessitated. This case was number 223 on the November 22, 1989, calendar. To secure 223 files so that the court could engage in the weighing process mandated by rule 373(e) of the California Rules of Court would constitute an enormous burden which the taxpayers should not have to assume. Collectively, these legal, practical, and fiscal considerations militate against plaintiff's position that the November 22, 1989, decision not to dismiss should preclude subsequent relitigation of the discretionary dismissal issue.

### 4. The Policy Favoring Disposition of a Case on Its Merits Did Not Warrant the Trial Court in Denying the Dismissal Motion

Citing section 583.130, plaintiff contends that the policy of resolution of cases on the merits is to be "generally . . . preferred over the policy that requires dismissal for failure to proceed with reasonable diligence in the prosecution of an action . . . ." However, it is now well established that the policy only comes into play when a plaintiff makes a showing of some excusable delay. In a case involving an appeal after a trial court exercised discretion and ordered dismissal in *Salas* v. *Sears, Roebuck & Co., supra,* 42 Cal.3d at page 347, the Supreme Court held, "Once again, however, we conclude that although the interests of justice weigh heavily against disposing of litigation on procedural grounds—a policy we reaffirm—that policy will necessarily prevail only if a plaintiff makes some showing of excusable delay." As noted previously, the trial court did not clearly abuse its discretion when it concluded that plaintiff had failed to provide a proper justification for the delay in service. To sum up, when the trial court granted the motions to dismiss on October 10, 1989, there was no abuse of discretion.

### C. The Trial Court Should Not Have Concluded That *Trailmobile* Compelled Dismissal of the Present Case on November 14, 1989

■ As noted previously, the very able and experienced judge in this case noted that he felt dismissal was mandatory given the holding of *Trailmobile, Inc.* v. *Superior Court, supra,* 210 Cal.App.3d at pages 1455-1457. We conclude that *Trailmobile* did not require the trial court to dismiss the case after granting plaintiff's reconsideration request. We believe that *Trailmobile* is materially distinguishable from the present case and the trial court was free to exercise its discretion and deny the dismissal motion. As a result, when the trial court determined that *Trailmobile* required dismissal, it failed to utilize its discretionary powers that must necessarily be exercised by a trial court in ruling on a dismissal motion such as was pending in this case.

Therefore, the order granting reconsideration is affirmed and the order dismissing the case upon reconsideration is reversed. The case is remanded to superior court where discretion is to be exercised pursuant to section 583.110 et seq. and rule 373(e) of the California Rules of Court.

We believe that *Trailmobile* did not require the trial court to grant the dismissal motion for two reasons. First, we disagree with our colleagues in *Trailmobile* insofar as they held that the mere failure to exercise diligence required dismissal. At one point, the court in *Trailmobile* held, "Thus, to avoid dismissal, a plaintiff who has delayed prosecution beyond the discretionary deadlines must make some showing that the lack of activity was excusable." (210 Cal.App.3d at pp. 1455-1456.) The last time the California Supreme Court considered whether dismissal was mandatory when there was insufficient diligence in a discretionary dismissal case was in *Denham* v. *Superior Court, supra*, 2 Cal.3d at page 563, where the court held: "The [discretionary dismissal] statute places no restrictions on the exercise of the trial court's discretion, and in particular there is no requirement that the motion to dismiss 'must' be granted unless opposed by an adequate showing of diligence or excuse for delay." The Supreme Court then proceeded to disapprove six cases which held that when an inadequate justification for delay was present, a discretionary dismissal motion must be granted. We are bound by *Denham*. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) Other Supreme Court cases which have upheld discretionary dismissal orders (*Salas* v. *Sears Roebuck & Co., supra*, 42 Cal.3d at pp. 347-349; *Blank* v. *Kirwan, supra*, 39 Cal.3d at p. 331; *Sanborn* v. *Chronicle Pub. Co.* (1976) 18 Cal.3d 406, 418-419 [134 Cal.Rptr. 402, 556 P.2d 764]) have all determined that the trial court which exercised discretion and dismissed the case did not abuse its discretion. No Supreme Court case has disapproved of the *Denham* rule that the absence of diligence does not necessarily require dismissal; rather, all of the post-*Denham* discretionary dismissal Supreme Court decisions have upheld a trial court's consideration of the fact that the plaintiff was not diligent as a factor showing the trial court did not abuse its discretion. Insofar as *Trailmobile* appears to hold that dismissal is mandatory in a case when no justification is provided for delay, we respectfully conclude that *Denham* is the controlling authority.

Our conclusion that *Trailmobile* did not require dismissal in the present case is justified in a different respect by the holding of *Denham*. One of the cases disapproved of in *Denham* v. *Superior Court, supra*, 2 Cal.3d at page 563, was *Black Bros. Co.* v. *Superior Court* (1968) 265 Cal.App.2d 501, 507 [71 Cal.Rptr. 344]. In *Black Bros.*, a plaintiff was injured in the workplace and pursued a claim "for an award of workmen's compensation benefits." (*Id.*, at p. 504.) On January 22, 1965, the plaintiff filed a third party

complaint against defendant Black Brothers Co. When the plaintiff was injured, he was using a glue spreader manufactured by the defendant Black Brothers Co. The plaintiff alleged that the glue spreader was negligently manufactured. Because he was awaiting the outcome of the "workmen's compensation proceedings" so that the amount of the employer's lien for benefits paid to plaintiff against any recovery from a third party tortfeasor such as defendant Black Brothers Co. would be known (Lab. Code, § 3852), the plaintiff delayed serving the complaint for 2 years, 11 months, 17 days after it was filed. The defendant's insurance company was aware of the suit against defendant Black Brothers Co. two months, eleven days after the complaint was filed although there was no evidence that the defendant Black Brothers Co. was aware of the filing of the suit. The superior court denied the defendant's discretionary dismissal motion pursuant to former section 583 which allowed a trial to dismiss a case which was not brought to trial within two years after filing. The Court of Appeal issued a writ of mandate and held that the defendant's insurance carrier's awareness of the suit two and one-half months after the complaint was filed and the existence of the "workmen's compensation" proceeding did not constitute a "valid excuse" for the failure to have served the complaint. (265 Cal.App.2d at pp. 507-510.) The facts in *Black Bros.* and the case at bar are very similar. In *Black Bros.*, the court held, as a matter of law, that the failure to serve the complaint was not justified by "valid excuse" and ordered dismissal. (*Id.*, at p. 510.) In *Denham*, the Supreme Court disapproved of the holding of *Black Bros.* insofar as it held that a "motion to dismiss 'must' be granted unless opposed by an adequate showing of diligence or excuse for delay." (*Denham v. Superior Court, supra*, 2 Cal.3d at p. 563.) The Supreme Court's disapproval of the holding of *Black Bros.* is further evidence as to why the suggestion in *Trailmobile* that dismissal is mandatory when there is an insufficient showing of diligence, does not correctly state the rule of law to be followed by trial courts in ruling on discretionary dismissal motions. A trial court may rely upon the absence of diligence as a basis for dismissing a case; however, based on *Denham*, it is not presently required to dismiss as a matter of law under circumstances such as those in the present case.

Second, unlike *Trailmobile*, no inference of prejudice was available to the trial court. The *Trailmobile* court concluded that the defendant had not proven it was prejudiced by the delay in service. (*Trailmobile Inc.* v. *Superior Court, supra*, 210 Cal.App.3d at p. 1457.) Instead, the *Trailmobile* court held that prejudice could be inferred from the delay. (*Ibid.*) We can find no logical basis for requiring an inference of prejudice in every discretionary dismissal case nor in the present one. The Legislature has never provided in the discretionary dismissal statutes for such an inference. Rule 373(e) of the California Rules of Court does not require prejudice to be inferred from the mere passage of time. No decision of the California Supreme Court requires

or permits a trial court to infer prejudice in all cases from a failure to diligently prosecute. The uncontradicted evidence before the trial court in the present case was that the workers' compensation insurance carrier insuring the employer was the same company that insured the three closely held corporate defendants from third party liability claims such as the suit prosecuted by plaintiff. As early as May 29, 1987, the attorney for one of the closely held corporate defendants was fully aware of the lawsuit. The uncontradicted evidence contained in the Kellogg declaration dated October 19, 1989, was: "The Dart entities at the time of this accident were small closely held corporations controlled by the same, or almost the same officers with the businesses of each of the corporations being run from the same address. [¶] I was informed by the attorneys defending the Plaintiff's Workers' Compensation case (*Ladd vs. Dart Warehouse*) that all of the *Dart* entities were insured by Farmers." Additionally, the aforementioned Kellogg declaration specifically referred to the May 29, 1987, letter from the employer's workers' compensation counsel which discussed the present lawsuit. Despite the opportunity on the part of defense counsel in the present case to present evidence concerning the unavailability of the trailer where the accident occurred or to dispute the uncontradicted evidence presented by plaintiff that the closely held corporations had not been prejudiced in any way by the delay in serving the complaint, no such showings were made. No inference of prejudice was available in the case at bar.

As a result, we respectfully disagree with the trial court's assessment that this case was controlled by *Trailmobile*. Even in the face of an unjustifiable delay in service, the trial court was free in considering all of the factors set forth in rule 373(e) of the California Rules of Court to deny the discretionary dismissal motion. Additionally, unlike *Trailmobile*, there was no evidence which would support an inference of prejudice.[10]

---

[10]As previously noted, we have remanded this case so that the trial court can exercise discretion since *Trailmobile* did not require the court to grant the dismissal motion. On remand, the superior court judge may take into account all of the factors listed in rule 373(e) of the court rules including the absence of any prejudice to the moving parties in the present case and the preference for resolution of civil disputes on the merits. (§ 583.130.) Furthermore, in exercising its discretion, the trial court is free to consider the fact that the early filing of the complaint on November 26, 1986, was, in the present case, a fortuitous event from defendants' perspective. Plaintiff was under no duty to file the complaint until after the conclusion of the workers' compensation proceedings. Plaintiff's injuries were sustained on March 13, 1986. A workers' compensation proceeding was instituted in 1986 and concluded on September 28, 1988. While the workers' compensation proceeding was pending, the one-year statute of limitations for filing the present third party suit was tolled. (*Elkins* v. *Derby* (1974) 12 Cal.3d 410, 412, 417-420 [115 Cal.Rptr. 641, 525 P.2d 81, 71 A.L.R.3d 839].) In other words, plaintiff could have deferred even the filing of the complaint until well after the September 26, 1988, date upon which the compensation proceeding ended. Additionally, upon remand, the superior court can consider the closely held nature of the corporate

## V. DISPOSITION

The orders granting the dismissal motion of October 9, 1989, and granting reconsideration are affirmed. The dismissal order of November 14, 1989, is reversed. The case is remanded to superior court with instructions to exercise discretion in determining whether to grant the dismissal motion. Each side is to bear its own costs on appeal.

Ashby, J., and Lucas, J.,* concurred.

---

structure of the employer and the purported third party tortfeasors as well as the fact that the employer and the other defendants all shared a common workers' compensation and liability insurance carrier.

*Retired Presiding Justice of the Court of Appeal, Second District, sitting under assignment by the Chairperson of the Judicial Council.