[No. B072717. Second Dist., Div. Six. Mar. 22, 1994.]

DEBORAH TERZIAN et al., Plaintiffs and Appellants, v.
COUNTY OF VENTURA, Defendant and Respondent.

80

**COUNSEL**

Kenneth M. Sigelman, Penelope A. Phillips and Bryan D. Parker for Plaintiffs and Appellants.

Monroy & Weiss and Jerrie S. Weiss for Defendant and Respondent.

## OPINION

**STONE (S. J.), P. J.**—Deborah Terzian, Janice Brown, Cheryl Lopez, Michael Brown and Kenneth Brown appeal from a judgment in favor of respondent County of Ventura (County). They contend that the trial court abused its discretion in dismissing defendant California Forensic Medical Group, Inc. (Group) pursuant to Code of Civil Procedure section 583.420, subdivision (a)(1), and incorrectly determined that decedent Charles Brown was a prisoner at the time the allegedly negligent acts occurred. We affirm the judgment.

### FACTS

Charles Brown was arrested on the evening of November 10, 1987, for several misdemeanor Vehicle Code violations and a violation of probation. He was taken to jail at approximately 11:40 p.m. at which time he was searched, his wallet and other personal property taken, and he was given a property inventory slip and turned over to the jail personnel by the arresting officer. Further booking procedures subsequently occurred, including his being photographed and fingerprinted. The official booking time was listed at 2:58 a.m., November 11, 1987, with a supplemental booking at 3:06 a.m.

A nurse saw Mr. Brown at 1:25 a.m. when he reported chest pain and gave a history of angina. He was given nitroglycerin. At some time between 1:25 a.m. and 9:25 a.m. Mr. Brown was seen by a physician at the jail who noted that Mr. Brown's pain had been alleviated and prescribed nitroglycerin as needed and Vistaril. In the early evening of November 11, 1987, Mr. Brown was found in his cell unconscious after suffering a heart attack. He was taken to a County hospital where he died a month later without ever having regained consciousness.

Appellants, Brown's children, filed suit against the County September 9, 1988, after their tort claim was rejected March 11, 1988. (Gov. Code, §§ 901, 911.2.) The County, in answering the complaint, asserted various affirmative defenses, including statutory immunities pursuant to the Government Code.

September 3, 1991, appellants amended their complaint to name Group as a Doe defendant and served the complaint September 4, 1991. The Group demurred to the complaint and moved to dismiss it, pursuant to Code of Civil Procedure sections 583.410, subdivision (a), and 583.420, subdivision (a)(1), which permit dismissal of an action when service is not made within two years after the action is commenced.

Appellants opposed the motion on grounds that they were unaware of the Group's existence until documents were produced by the County more than one and one-half years after the complaint had been filed. Appellants asserted that the Group produced no evidence indicating that the plaintiffs knew, or should have known, of the existence of the Group prior to the filing of the complaint. They further argued that the Group was aware of the case, retained counsel, and pursued discovery for at least seven months prior to the date on which it was served with the complaint, and could show no actual prejudice. The trial court granted the motion to dismiss Group.

At time set for trial, the parties agreed that the issue whether Charles Brown was a "prisoner" within the meaning of the Government Code immunity statutes would be tried first since a finding that he was a prisoner would result in a complete defense to all of appellants' causes of action and therefore dispose of the remaining issues in the case.

The court determined that Charles Brown became a prisoner at 11:40 p.m. on November 10, 1987, and entered judgment on behalf of the County.

### DISCUSSION

1. *No Abuse of Discretion in Dismissal of Group.*

██ On March 27, 1990, the County served its response to appellants' request to identify and produce documents. Among the documents produced were two pages of progress notes pertaining to medical care Mr. Brown had received while incarcerated. These records contained the Group's letterhead. January 4, 1991, when the County deposed two of the appellants, an attorney from the law firm of Monroy & Weiss appeared and identified herself as representing Wausau Insurance and the Group. She stated that the County had notified the Group of the existence of the lawsuit. At later depositions of appellants by the County on April 24, 1991, the counsel for the Group appeared as well.

Code of Civil Procedure sections 583.410, subdivision (a), and 583.420, subdivision (a)(1), allow the court to dismiss an action for delay in prosecution where service of the complaint was not made within two years after the action was commenced against the defendant. ██ In deciding whether to exercise this discretionary power, the court should consider the factors set forth in rule 373(e) of the California Rules of Court. (*Ladd* v. *Dart Equipment Corp.* (1991) 230 Cal.App.3d 1088, 1099 [281 Cal.Rptr. 813].) The competing considerations to be evaluated are the policies of discouraging stale claims and compelling reasonable diligence balanced

against the strong public policy which seeks to dispose of litigation on the merits rather than on procedural grounds. (*Ibid.*)

■ When the plaintiff has not served within the two-year period, the plaintiff is required to show excusable delay. (*Ladd* v. *Dart Equipment Corp.*, *supra*, 230 Cal.App.3d 1088, 1100.) A reviewing court may not reverse a trial court's order granting dismissal for dilatory prosecution unless the plaintiff meets the burden of establishing manifest abuse of discretion resulting in a miscarriage of justice. (*Ibid.*; *Schumpert* v. *Tishman Co.* (1988) 198 Cal.App.3d 598, 603 [243 Cal.Rptr. 810].) An appellate court may not substitute its own discretion for that of the trial court and must uphold the dismissal order if the trial court has not abused its discretion. (*Ladd* v. *Dart Equipment Corp.*, *supra*, at p. 1100.)

■ Here appellants, by their own admissions, received medical treatment records on the Group's letterhead in March 1990. Furthermore, even after the appearance of the Group's legal counsel in January 1991, appellants failed to amend their complaint and serve the Group until September 4, 1991, almost four years after Mr. Brown's death, and nine months after the Group's appearance at the deposition.

Appellants assert that since the Group was aware of the litigation since at least January 1991, it can show no prejudice. The Group did not have to show actual prejudice where there has been an unjustified delay in service of the summons and complaint of almost three years. (*Schumpert* v. *Tishman Co.*, *supra*, 198 Cal.App.3d 598, 605-606; see also *Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 332 [216 Cal.Rptr. 718, 703 P.2d 58].) ■ Prejudice is presumed from unexplained delay, particularly in serving the complaint. (*Hilliard* v. *Lobley* (1989) 216 Cal.App.3d 638, 641 [265 Cal.Rptr. 5].) Lack of prejudice to the defendant remains a valid consideration after *Blank* v. *Kirwan* where the plaintiff has acted diligently from the outset. (*Schumpert*, *supra*, at p. 606.)

■ While appellants offered some explanation for the delay, the court did not abuse its discretion in finding it insufficient, given the information known to appellants. We will not disturb the court's grant of dismissal.

2. *Brown Was a Prisoner at the Relevant Times.*

Government Code section 844.6 provides, in pertinent part, that a public entity is not liable for an injury to any prisoner. A "prisoner" includes an inmate of a prison, jail or penal or correctional facility. (Gov. Code, § 844.) The parties stipulated that the success of appellants' lawsuit against the

County depended upon whether decedent Charles Brown was a "prisoner" within the meaning of the Government Code at the time he received the medical care alleged to be negligent. The County's records indicate that medical care was initially rendered at 1:25 a.m. on November 11, 1987.

The trial court heard the testimony of Sergeant Gary Cook, the jail services supervisor since 1985, regarding the booking procedures and reviewed the pertinent arrest and booking records. Additionally, the court personally toured the reception and booking area of the jail. The court made the following findings of fact: Charles Brown was arrested on suspicion of three misdemeanor Vehicle Code violations. He was delivered to the County jail on November 10, 1987, at or about 11:40 p.m., when sheriff's officer Hesse searched him and obtained his wallet and watch, et cetera, and he was given a booking number.

The court found that at that point he was no longer an arrestee as he had been delivered to the custody of the sheriff's officers and the delivery was complete when he went through the metal doors into the jail to the booking area. At that time the arresting officer signed the personal property form and went back to the streets, leaving Mr. Brown to be given a booking number, an armband, and directed in one of the first steps of the booking process, to the holding cells with the telephones. The court found as a matter of law that Charles Brown was a prisoner at all times material because he was confined in a correctional facility and he was under the authority of the jail law enforcement officers, or legal process.

The crucial question, as identified by appellants, is at what point an "arrestee" becomes a "prisoner" for purposes of the governmental immunity statutes. Appellate courts have struggled with this question, not always consistently. (See, e.g., *Patricia J.* v. *Rio Linda Union Sch. Dist.* (1976) 61 Cal.App.3d 278, 283 [132 Cal.Rptr. 211], and cases cited therein.) *Patricia J.* concluded that ". . . a prisoner must be a person confined in a correctional facility or institution under the authority of law enforcement authorities or legal process." (61 Cal.App.3d 278, 287.) *Larson* v. *City of Oakland* (1971) 17 Cal.App.3d 91, 97 [94 Cal.Rptr. 466], held that the definition of "prisoner" did not extend to persons detained by the police but not arrested, or arrested and not booked, and "clearly was not intended to embrace persons detained by law officers temporarily for purposes of investigation."

*Meyer* v. *City of Oakland* (1980) 107 Cal.App.3d 770, 778 [69 Cal.Rptr. 788], elaborated that the term "prisoner" includes "a person who is *confined* in a facility or institution, under the authority of law but pursuant to a *penological* or *correctional* objective" as opposed to one who is simply being

restrained involuntarily, as stated in *Datil* v. *City of Los Angeles* (1968) 263 Cal.App.2d 655, 659 [69 Cal.Rptr. 788] (although Datil had been booked and arrested). In essence, "[j]udicial decisions construing the definition of prisoner within [Gov. Code] sections 844 and 844.6 have focused upon the element of confinement due to court commitment or legal process." (*Badiggo* v. *County of Ventura* (1989) 207 Cal.App.3d 357, 360 [254 Cal.Rptr. 771].)

Appellants assert that Charles Brown was simply an arrestee until completion of the formal booking process at 3:06 a.m. on November 11, 1987. They rely for this proposition on *Zeilman* v. *County of Kern* (1985) 168 Cal.App.3d 1174 [214 Cal.Rptr. 746]. In *Zeilman*, the appellate court reversed a grant of summary judgment because it found there was a triable issue of fact as to plaintiff's status as a prisoner at the time of her injury. In *Zeilman*, plaintiff's attorney obtained an "OR release" for plaintiff shortly after her arrest and declared that when he arrived at the jail, he saw plaintiff being booked. (*Id.*, at p. 1182.) After an arrest and booking report and property inventory were filled out, she was told she could sit down on a bench adjacent to the booking area. (*Ibid.*) While walking to the bench, she fell and was injured.

The reviewing court in *Zeilman* held that ". . . the line of demarcation between status as an arrestee and as a confined person is the completion of the booking process. Once an arrestee has been booked, the status of the arrestee changes since he or she has become confined to a correctional facility under the authority of law." (168 Cal.App.3d 1174, 1181.) The court could not hold as a matter of law, based on the declarations presented, that the booking process had been completed because it opined that plaintiff was entitled, immediately upon completion of the booking process, to an OR release, subject only to signing the release agreement. (*Id.*, at p. 1183.) Since she was directed to sit down instead of being released, the court held that there was a triable issue of fact whether plaintiff was a prisoner at the time of her injury. (*Ibid.*)

Even though Penal Code section 7, subdivision 21, provides that "[t]o 'book' signifies the recordation of an arrest in official police records, and the taking by the police of fingerprints and photographs of the person arrested, *or any of these acts following an arrest*" (italics added), the reviewing court was not persuaded that this language "necessarily means as a matter of law that completion of the record of the arrest in official police records completes the booking process, whether or not the particular law enforcement agency requires completion of all three acts prior to a prisoner's release." (*Zeilman* v. *County of Kern*, *supra*, 168 Cal.App.3d 1174, 1183.)

Appellants assert that *Zeilman* has never been disapproved and, in fact, has been cited with approval in *Peterson* v. *County of Los Angeles* (1986) 185 Cal.App.3d 705, 708 [230 Cal.Rptr. 80]. In *Peterson*, however, the plaintiff had already been convicted and was in jail in the custody of the sheriff when he was injured. (*Ibid.*) *Peterson* did not discuss the elements of booking, as defined in Penal Code section 7, subdivision 21. A perusal of the cases discussing the definition of "prisoner" under Government Code section 844 and the facts of this case compel a conclusion that the court did not err in finding Charles Brown a prisoner at the pertinent times herein.

■ Whatever the definition of the term "prisoner" includes, it does *not* include a person merely under arrest and still in the custody of the arresting officer. (See 74 Ops.Cal.Atty.Gen. 21, 23 (1991).) Although booking may, as a matter of law, distinguish a prisoner from an arrestee, whether a person has been booked is essentially a question of fact. *Zeilman*, contrary to appellants' arguments, did not hold that the booking process had to include photographing and fingerprinting before it could be considered completed. The reviewing court simply could not state as a matter of law from the declarations before it that the plaintiff had been booked.

■ Here Sergeant Cook stated that the formal booking procedure could take from hours to days, depending upon how many arrestees were in custody and the condition of the particular arrestee. According to Sergeant Cook, the County jail has several types or stages of booking, i.e., reception booking, master booking, supplemental booking, and final booking. However, once the initial reception booking is completed, i.e., the arrestee is searched, initial booking information taken, property inventoried, and a property inventory slip is signed and given to the arrestee, the arresting officer turns the arrestee over to the jail personnel and the arrestee is given a booking number and wristband and placed in a holding cell. At that point, the arresting officer leaves and the person is now in the custody of the County Sheriff's Department.

Decedent Brown was photographed and fingerprinted but the records did not show the exact time these procedures were completed. Nonetheless, it is clear from the record that once the arresting officer had turned Brown over to the jail deputies, Brown was confined to jail under legal process and was not free to leave of his own accord. Under appellants' version of *Zeilman*, an arrestee could be incarcerated for an extended period, but because, due to some unforeseen circumstance he or she was not fingerprinted or photographed or not all supplemental booking was completed until a later time, the person would not be "confined to a correctional facility under the authority of law" (*Zeilman* v. *County of Kern, supra*, 168 Cal.App.3d 1174,

1181) until all those acts were completed even though the person was not free to leave. Such a strained interpretation of "booking" is unreasonable.

Based upon the record herein, the trial court did not err in concluding that Charles Brown had become a prisoner when he was turned over to the custody of the sheriff's department upon completion of the initial booking in the reception area.

The judgment is affirmed. Costs to respondent County.

Gilbert, J., and Yegan, J., concurred.