[No. H013358. Sixth Dist. Aug. 23, 1995.]

DEBORAH SUE REED, Plaintiff and Appellant, v.
COUNTY OF SANTA CRUZ, Defendant and Respondent.

## Counsel

David Ross for Plaintiff and Appellant.

Dwight L. Herr, County Counsel, and Harry A. Oberhelman III, Assistant County Counsel, for Defendant and Respondent.

## OPINION

**MIHARA, J.**—Plaintiff filed an action against defendant County of Santa Cruz for personal injuries she received when she was assaulted by a man who was confined with her in a holding room at the Santa Cruz County jail while they were both in the process of being booked on criminal charges.[1] Defendant sought summary judgment on the ground that it was immune from liability pursuant to Government Code section 844.6 because plaintiff was a "prisoner" at the time of the assault. The summary judgment motion was heard on agreed facts. "[O]n Feb. 2, 1992, Plaintiff, Deborah Sue Craft [Reed], was arrested on two outstanding valid warrants by a Sheriff's Deputy and brought to the Santa Cruz County Jail. . . . At about 11:50 PM, Plaintiff was brought into the intake sallyport by the arresting officer. Plaintiff was searched by Defendant Valadez because a female officer was required to conduct searches on female arrestees. Plaintiff signed the Field Arrest Form. Defendant Valadez also completed the Intake Health Screening form. Plaintiff was placed in one of the holding rooms to await the last stage of the booking process, the creation of a computer record. A male arrestee was present in the holding room and allegedly assaulted the Plaintiff. . . . Subsequently, Plaintiff's arrest information was entered into the computer at about 1:59 AM. Plaintiff remained in a holding room until her release at 8:30 AM after bail had been posted. [¶] The male arrestee who assaulted Plaintiff was Brian Schuler. Brian Schuler had been arrested and admitted into the jail before Plaintiff. After completion of the initial stages of the booking process, he had been placed in the holding room to await preparation of his computer booking record."

The court granted defendant's summary judgment motion and entered judgment for defendant. Plaintiff filed a timely notice of appeal.

### ANALYSIS

### A. *Plaintiff Was a "Prisoner" as a Matter of Law*

"[A] public entity is not liable for: [¶] (1) An injury proximately caused by any prisoner. [¶] (2) An injury to any prisoner." (Gov. Code, § 844.6, subd. (a).) " '[P]risoner' includes an inmate of a prison, jail or penal or correctional facility." (Gov. Code, § 844.) Plaintiff claims that the undisputed facts do not establish that she was a "prisoner" when she was assaulted at the Santa Cruz County jail. We conclude that the undisputed facts establish as a matter of law that plaintiff was a "prisoner" at the time of the alleged assault.

---

[1]Plaintiff also sued a number of other persons. However, the summary judgment which is the subject of this appeal was granted only as to defendant County of Santa Cruz.

■ Governmental immunity statutes are intended "to confine potential governmental liability to rigidly delineated circumstances." (*Williams* v. *Horvath* (1976) 16 Cal.3d 834, 838 [129 Cal.Rptr. 453, 548 P.2d 1125].) Therefore, statutes granting immunity should not be so narrowly interpreted as to expose the government to potential liability which the Legislature clearly intended to preclude. In this context, courts have attempted to interpret the scope of the word "prisoner" as it is used in Government Code section 844.6. The focus has always been on whether the person was lawfully confined in a jail, prison or other similar penal facility. (*Larson* v. *City of Oakland* (1971) 17 Cal.App.3d 91, 95 [94 Cal.Rptr. 466]; *Badiggo* v. *County of Ventura* (1989) 207 Cal.App.3d 357, 360 [254 Cal.Rptr. 771].) While several courts have defined "prisoner" as "a person confined in a correctional facility or institution under the authority of law enforcement authorities or legal process," other courts have found this definition inadequate. (*Meyer* v. *City of Oakland* (1980) 107 Cal.App.3d 770, 776 [166 Cal.Rptr. 79] [person held in civil protective custody is not a "prisoner"].) Hence, courts have further refined the definition of "prisoner" to reflect that the confinement of the person must be for "a *penological* or *correctional* objective" or the person must be "incarcerated as a part of the penal process. . . ." (*Meyer* at p. 778; *Peterson* v. *County of Los Angeles* (1986) 185 Cal.App.3d 705, 709 [230 Cal.Rptr. 80]; *Griffith* v. *City of Monrovia* (1982) 134 Cal.App.3d Supp. 6, 10 [184 Cal.Rptr. 709].)

■ The undisputed facts established that plaintiff was arrested under warrant, taken to jail and confined in a jail holding room. It is simply impossible to construe these facts in any way other than to find that plaintiff was lawfully confined as part of the penal process at the time of the alleged assault. Plaintiff did not challenge the lawfulness of her arrest, and it is indisputable that confinement in a holding room after arrest pursuant to a warrant is "part of the penal processes." Nevertheless, plaintiff focuses on what she perceives as a split of authority between *Zeilman* v. *County of Kern* (1985) 168 Cal.App.3d 1174 [214 Cal.Rptr. 746] and *Terzian* v. *County of Ventura* (1994) 24 Cal.App.4th 78 [28 Cal.Rptr.2d 809] and argues that *Zeilman* precludes affirmance of the trial court's judgment. While *Zeilman* contains language which seems to support plaintiff's contention, we find that this language was unnecessary to the result in *Zeilman* and has no application outside of the facts of *Zeilman*. Consequently, we perceive no irreconcilable inconsistency between the holdings in *Zeilman* and *Terzian*.

Zeilman was arrested pursuant to a warrant and taken to the Kern County jail for booking. Zeilman's attorney had already obtained a court order for Zeilman's release which "he was told . . . would be honored . . . *after* the booking process was completed." (*Zeilman* v. *County of Kern, supra,* 168

Cal.App.3d at pp. 1177-1178, italics in original.) While Zeilman waited "in the busy booking area," she slipped, fell and suffered injury. At the time Zeilman fell, two parts of an "arrest and booking report" had been completed, but the portions of this report regarding fingerprints and photographing had not been completed. (*Zeilman, supra*, at p. 1177.) Zeilman had not yet been fingerprinted or photographed. (*Id.* at pp. 1177, 1183.) Zeilman sued Kern County for the personal injuries resulting from her fall. Summary judgment was granted to Kern County based on Government Code section 844.6, and Zeilman appealed. (168 Cal.App.3d at pp. 1176-1177.) The appellate court acknowledged that "prisoner" was defined as a person "who [has] become confined in a correctional facility or institution under the authority of law enforcement authorities or legal process." It then noted that "it *appears* the line of demarcation between status as an arrestee and as a confined person is the completion of the booking process. Once an arrestee has been booked, the status of the arrestee changes since he or she has become confined to a correctional facility under the authority of law." (*Id.* at p. 1181, italics added.) The appellate court observed that it had not been established as a matter of law whether Zeilman was going to be fingerprinted and photographed as part of the booking process. The county's failure to establish this fact, combined with evidence which showed that "plaintiff was entitled, immediately upon completion of the booking process, to an OR release," precluded summary judgment. The court held that there was a material disputed factual issue regarding whether Zeilman "[had] become confined to a correctional facility under the authority of law" at the time of her fall. (*Id.* at pp. 1181-1183.)

The holding in *Zeilman* does not provide any substantial support for plaintiff's contention that she was not a "prisoner" at the time she was assaulted. *Zeilman*'s reference to the completion of the booking process as the "line of demarcation" defining when a person becomes a prisoner was simply dicta which was not necessary to the appellate court's decision. This reference was material only because of the court order directing Zeilman's release "immediately upon completion of the booking process." (168 Cal.App.3d at p. 1183.) As the completion of the booking process should have resulted in Zeilman's release, the appellate court logically concluded that there was a genuine factual issue as to whether Zeilman was being confined by lawful authority at the time of her fall. The fact that fingerprinting and photographing, which were apparently requisite parts of the arrest and booking report, had not yet been completed, and Zeilman had not been placed in an area more secure than the "busy booking area," illustrated the existence of a material factual dispute regarding Zeilman's status at the time of her fall.

In contrast, the undisputed facts here establish that plaintiff was being confined by lawful authority at the time of the assault. The arresting officer

surrendered custody of plaintiff to a detention officer at the jail. Plaintiff was searched, and she completed the necessary paperwork for booking before she was placed in a holding room. The booking process was not considered "complete," however, because a computer record had not yet been created. Subsequent to the assault, plaintiff was removed from the holding room and "additional information needed to complete a computer booking record" was obtained from her.

Plaintiff claims that under *Zeilman* she was not a prisoner at the time of the assault because the booking process had not been "completed." We do not agree with *Zeilman* that the completion of the booking process is necessary before a person can be considered a "prisoner." Instead, as other courts have held, a person is a prisoner if the person is confined in a jail, correctional facility or penal institution pursuant to lawful penal processes. *Terzian* illustrates why a person should be considered a prisoner notwithstanding whether the booking process has technically been completed.

*Terzian* arose from the death of Charles Brown. Brown was arrested and taken to the Ventura County jail. He was delivered by the arresting officer to the custody of jail officers shortly before midnight. (*Terzian* v. *County of Ventura, supra*, 24 Cal.App.4th at pp. 81, 84.) Booking was not completed until around 3 a.m. At 1:25 a.m., Brown received medical care for chest pain. He suffered a heart attack the next day, and thereafter died. (*Terzian* at p. 81.) His children sued Ventura County, and it was agreed by the parties at trial that the only issue was whether Brown was a "prisoner" at the time the allegedly deficient medical care was rendered. (*Id.* at p. 82.) The trial court determined that Brown was a prisoner when he was brought to the jail and the booking process began. (*Id.* at p. 82.) On appeal, Brown's children, relying on *Zeilman*, claimed that Brown had not been a prisoner at the relevant time because "the formal booking process" had not yet been completed. (*Id.* at p. 85.) The *Terzian* court concluded that *Zeilman* was not dispositive.

"Although booking may, as a matter of law, distinguish a prisoner from an arrestee, whether a person has been booked is essentially a question of fact. *Zeilman*, contrary to appellants' arguments, did not hold that the booking process had to include photographing and fingerprinting before it could be considered completed. The reviewing court simply could not state as a matter of law from the declarations before it that the plaintiff had been booked." (*Terzian* v. *County of Ventura, supra*, 24 Cal.App.4th at p. 86.) "Under appellants' version of *Zeilman*, an arrestee could be incarcerated for an extended period, but because, due to some unforeseen circumstance he or she was not fingerprinted or photographed or not all supplemental booking

was completed until a later time, the person would not be 'confined to a correctional facility under the authority of law . . .' until all those acts were completed even though the person was not free to leave. Such a strained interpretation of 'booking' is unreasonable." (*Terzian, supra,* at pp. 86-87, internal citations omitted.) The *Terzian* court held that the trial court had not erred in concluding that Brown "had become a prisoner when he was turned over to the custody of the sheriff's department upon completion of the initial booking in the reception area." (*Id.* at p. 87.)

As *Terzian* explained, it is a question of fact whether a person has become a prisoner prior to the completion of the formal booking process. A person who is lawfully confined in a correctional facility pursuant to penal processes is a prisoner as a matter of law within the meaning of Government Code section 844.6. The major distinction between *Terzian* and *Zeilman* is the posture of the two cases. *Terzian* was an appeal after a court trial. The appellate court determined that the evidence supported the trial court's finding that Brown was a prisoner after the completion of the "initial" booking processes even though the entire formal booking process had not been completed. *Zeilman* was an appeal from a summary judgment. There was a dispute of fact as to whether Zeilman had completed even the initial booking processes prior to her fall. The appellate court determined that summary judgment was precluded because of the existence of this material factual dispute. The instant matter, like *Zeilman,* is an appeal from a summary judgment. However, unlike *Zeilman,* plaintiff did not claim below, and does not claim on appeal, that there was a material dispute regarding the facts. The facts were agreed to below, and they establish as a matter of law that plaintiff had completed the only booking processes necessary to warrant her lawful confinement in jail and had in fact been placed in a jail holding room. The mere fact that the detention officer had not yet finalized the booking process by creating a computer record is immaterial. Under anything other than a "strained" and unduly narrow interpretation of Government Code section 844.6, plaintiff was a "prisoner" as a matter of law on the undisputed facts before the trial court.

### B. *Equal Protection Challenge*

■ Plaintiff claims that the distinction drawn in Government Code section 844.6 between prisoners and arrestees is irrational because "a person who was arrested in a jurisdiction where he would be booked at the police station could sue the public entity for injuries that occurred during booking, whereas one arrested in a jurisdiction where the booking occurred at a 'jail or penal or correctional facility' (Gov. Code 844) could not sue." She asserts that such a distinction "irrationally distinguish[es] between individuals depending upon the location of the arrest." The statute does not draw the

distinction plaintiff claims. A person who is arrested, booked and confined in a jail at a police station or elsewhere is a prisoner. If the person is not confined in such a facility, the person is not a prisoner. Government Code section 844.6 does not distinguish based on the location of the arrest, but rather based on the nature of the confinement. This distinction is not irrational.

"The equal protection clause of the Fourteenth Amendment to the United States Constitution denies states 'the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute.' (*Reed* v. *Reed* (1971) 404 U.S. 71, 75-76 [30 L.Ed.2d 225, 229, 92 S.Ct. 251].)" (*People* v. *Leung* (1992) 5 Cal.App.4th 482, 494 [7 Cal.Rptr.2d 290].) The only question is whether the distinction between a person in the custody of law enforcement officers (an arrestee) and a person in the custody of correctional officers (a "prisoner") is based on some rational criteria related to the statute. The legislative purpose underlying Government Code section 844.6 is to preclude tort liability where " 'damages [are] sustained as the consequence of conditions which are common to all inmates and which simply represent a reasonable application of general policy determinations by responsible prison or jail authorities with respect to the administration of such institutions.' " (*Badiggo* v. *County of Ventura, supra,* 207 Cal.App.3d 357, 360.) While the distinction made by Government Code section 844.6 could have been drawn more narrowly, it is readily apparent that arrestees are not subject to "conditions which are common to all inmates" but are instead subject to varied treatment based on the circumstances of their arrest and the discretion of the arresting officer. The Legislature rationally concluded that immunity was appropriate with respect to prisoners, but inappropriate with regard to arrestees, because jail and prison authorities exercise less discretion than law enforcement officers and act pursuant to general policies based on common conditions rather than varied circumstances. Hence, the distinction made by Government Code section 844.6 is supported by a rational basis. Plaintiff's equal protection challenge fails.

## CONCLUSION

The judgment is affirmed.

Bamattre-Manoukian, Acting P. J., and Wunderlich, J., concurred.